[Civ. No. 45650. First Dist., Div. Two. Dec. 22, 1980.]

MAUREEN BYRNE, a Minor, etc., Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

732

734

COUNSEL

Terence J. O'Reilly and Walkup, Downing, Shelby, Bastian, Melodia, Kelly & O'Reilly for Plaintiff and Appellant.

George Agnost, City Attorney, Dan Maguire, Deputy City Attorney, Bledsoe, Smith, Cathcart, Boyd & Eliot, R. Mitchell S. Boyd, John L. Winigham, Shelley A. Kramer and Winingham, Roberts & Rogie for Defendants and Respondents.

## OPINION

TAYLOR, P. J.—This is an appeal[1] from a judgment entered on a special jury verdict finding that the evidence did not establish negligence on the part of any defendant amounting to a proximate cause of personal injuries sustained by the minor plaintiff. The questions are whether: 1) the trial court properly refused plaintiff's proffered jury instruction based on Vehicle Code section 21951; and 2) the trial court abused its discretion by denying plaintiff's motion for a new trial on grounds that the evidence was insufficient to justify the verdict. For the reasons set forth below, we have concluded that the judgment must be affirmed.

The record reveals the following pertinent facts: The accident occurred about 4 p.m. on March 26, 1974. Plaintiff, who was then 14 years old, got off a city municipal railway bus at the southeastern corner of the intersection of Sunset Boulevard and Santiago Street in San Francisco. Sunset has three lanes of traffic traveling north and south; Santiago crosses in an east and west direction with arterial stop signs. Plaintiff had passed in front of the stopped city bus when she was first struck in the marked crosswalk, by the red 1972 Ford pickup truck driven by Cousins in the middle lane, and then by the 1971 Camaro in the left lane driven by Larsen. The oncoming traffic was on plaintiff's left as she crossed Sunset.

Plaintiff testified that she had no memory of the accident itself until she was under the second vehicle, but she was sure that she was walking. She did not recall whether or not she looked for oncoming traffic before leaving the sidewalk or before stepping out from behind the bus. She had been instructed by her parents and at school to look to her left and right for oncoming cars before starting to cross the street; it was her custom and habit to do so.

---

[1]The morning of the scheduled oral argument, the parties informed this court that the matter had been settled (Cal. Rules of Court, rule 38). A voluntary dismissal will ordinarily not be permitted where the public is interested (*Memorial Hosp. of So. Cal. v. State Health Planning Council* (1972) 28 Cal.App.3d 167, 175-176 [104 Cal.Rptr. 492]). The issue raised by this appeal is a question of first impression and of great public interest that is likely to arise and again be litigated and appealed. Although the matter is now subject to dismissal, we proceed to render this opinion because the issue presented is of sufficient interest and importance (*United Farm Workers of America v. Superior Court* (1976) 16 Cal.3d 499 [128 Cal.Rptr. 209, 546 P.2d 713]; *Green v. Layton* (1975) 14 Cal.3d 922, 925 [123 Cal.Rptr. 97, 538 P.2d 225]).

Cousins testified that plaintiff was doing a "running walk" and looking straight ahead until she looked at him immediately before impact. The city's bus driver Lawrence testified that plaintiff was walking fast and looking down and that she never looked to the left before the collision. Lawrence saw oncoming traffic and honked his horn to warn her not to proceed into the middle lane, but plaintiff did not turn her head; she appeared to walk faster.

Lawrence had stopped the bus to discharge passengers. He first noted plaintiff when she was almost in the middle of the front of the bus. Lawrence never moved the bus after its initial stop until he left the scene about six minutes after the accident. He did not have his turn signal on, but he did have his brake lights on. They were activated by the open doors of the bus; the doors were still open at the time of the accident.

Cousins and Larsen were traveling within the legal speed limit of 30 miles per hour and did not see plaintiff until immediately before the accident. Cousins' view of the sidewalk and crosswalk was obstructed by the bus so that he did not see plaintiff until she stepped from behind the bus and into his path. He immediately put on his brakes but was not able to avoid hitting her. Cousins had been aware of the possibility of pedestrians and briefly took his foot off the accelerator before approaching the intersection.

Larsen's vision of the right side was obstructed by Cousins' pickup truck which blocked his view of all of the curb lane and part of the middle lane. Larsen did not see the bus until after the accident. He first realized that there was the danger of an accident when he heard the squealing of the pickup truck's brakes. Larsen immediately applied his brakes. While approaching the intersection, he also briefly let up on the gas pedal in case there might be any pedestrians or vehicles starting to cross Sunset.

Larsen's statement that he did not see plaintiff prior to impact was supported by his expert, Dr. Stuart, who testified that Larsen could not see the plaintiff prior to her falling in his path; in his opinion, there was no way Larsen could have avoided the accident. Cousins' statement that his view of plaintiff was blocked before she stepped into his path was supported by the testimony of the investigating officers who reported that the cause of the accident was the city bus which obstructed the vision of the oncoming motorists.

Plaintiff was aware that the front of the bus was higher than the top of her head and that it was wide enough to fill the traffic lane. She testified that she knew that she would not be visible to cars coming down the street, and that she "thought" she realized that vehicles would be coming down left to right. Plaintiff was familiar with the intersection and knew that Sunset was a through street with vehicles moving at 30-35 miles per hour.

Plaintiff's first assignment of error is trial court's refusal to give her proffered instruction based on Vehicle Code section 21951, which provides: "*Whenever any vehicle has stopped at a marked crosswalk* or at any unmarked crosswalk at an intersection *to permit a pedestrian to cross the roadway the driver of any other vehicle approaching from the rear shall not overtake and pass* the stopped vehicle." (Italics added.)

Plaintiff correctly states the rule that a party is entitled to have the jury instructed on all theories of the case supported by the pleadings and the evidence. The evidence necessary to justify the giving of an instruction need not be overwhelming. She properly relies on *Washington v. City & County of S. F.* (1954) 123 Cal.App.2d 235, 238 [266 P.2d 828], and *Phillips v. G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33], to argue that the evidence presented may be slight, inconclusive, or even opposed to the preponderance of the evidence.

We think, however, that plaintiff has not met the threshold burden of placing herself within the fact pattern covered by Vehicle Code section 21951 (*Mishkin v. Sanvidotti* (1958) 158 Cal.App.2d 511, 515 [322 P.2d 526]). Here, the bus was stopped at, or very close to, the marked crosswalk; plaintiff was struck while in the crosswalk. Uncontroverted evidence indicated that the bus was stopped to allow passengers to disembark. The bus driver (Lawrence) testified that he had stopped to discharge passengers and that the door to the bus was still open when plaintiff was struck. Plaintiff argues that her instruction should have been given on the basis of a reasonable inference that while the bus had stopped initially to allow passengers to disembark, by the time that she crossed in front of the bus, it had to stop to permit her to use the crosswalk.

However, as Larsen points out, plaintiff's argument was decimated by Lawrence's uncontradicted testimony that he did not see plaintiff

until she was in the middle of the front of the bus and that he sought to prevent her from continuing to cross the street in the face of oncoming traffic by honking his horn. As the record contains no other evidence as to why the city bus stopped, there is no evidence to support a finding of the preliminary fact that is the prerequisite for the application of Vehicle Code section 21951. The only fact established was that the bus was stopped to discharge passengers; there is no basis for an inference that the bus remained stopped to allow pedestrians to cross.

■ Plaintiff relies on the rule that when conflicting evidence is presented, the jury must be given instructions on each theory in keeping with their role as the trier of fact (*Cohen v. Bay Area Pie Co.* (1963) 217 Cal.App.2d 69 [31 Cal.Rptr. 426]; *Gonsalves v. Petaluma Bldg. Materials Co.* (1960) 181 Cal.App.2d 320 [5 Cal.Rptr. 332]). These authorities, while correctly stating the current law, are inapposite here, as there is no conflict of evidence about the purpose for which the bus had stopped at the time of the accident.

The issue of whether the jury should have been given the Vehicle Code section 21951 instruction has not previously been raised in a reported case in this state. Cousins relies on the only reported United States case, *Titus v. Stouffer* (1941) 35 Ohio L. Abs. 145 [40 N.E.2d 178]. In *Titus*, the Court of Appeals of Ohio affirmed the trial court's exclusion of a municipal ordinance with provisions substantially similar to Vehicle Code section 21951 on the ground that there, as here, there was no evidence indicating the bus was stopped to allow pedestrians to cross; rather, the bus had stopped solely to allow passengers to get on and off the vehicle.

■ Plaintiff's second assignment of error is that the trial court abused its discretion by denying her motion for a new trial pursuant to Code of Civil Procedure section 657[2] on the ground that the evidence

---

[2]So far as pertinent, the statute provides: "A new trial shall not be granted upon the ground of insufficiency of the evidence to justify the verdict or other decision...unless after weighing the evidence the court is convinced from the entire record, including reasonable inferences therefrom, that the court or jury clearly should have reached a different verdict or decision."

The 1965 amendment (which added the quoted paragraph) did not lessen the discretion of the trial court to grant or deny motions for a new trial (*Dixon v. St. Francis Hotel Corp.* (1969) 271 Cal.App.2d 739, 741 [77 Cal.Rptr. 201]; *Thompson v. John Strona & Sons, supra,* 5 Cal.App.3d p. 709)

was insufficient to justify the verdict. She also argues that defendants were guilty of negligence per se since she was in the crosswalk when she was struck.

■ In considering a motion for a new trial, the trial court has an affirmative duty to make an independent appraisal of the evidence and to grant the motion when the preponderance of evidence is opposed to the findings of the jury (*Brown* v. *Guy* (1956) 144 Cal.App.2d 659, 661 [301 P.2d 413]; *Judd* v. *Chabek* (1958) 162 Cal.App.2d 574, 577 [328 P.2d 245]; *Bernson* v. *Bowman* (1960) 182 Cal.App.2d 697, 700 [6 Cal.Rptr. 455]; *Pemberton* v. *Barber* (1962) 199 Cal.App.2d 534, 538 [18 Cal.Rptr. 784]). ■ On review, the scope of our inquiry is more limited, as we review the ruling of the trial court for an abuse of discretion. "'. . . the granting of a motion for a new trial rests within the discretion of the trial judge to such an extent that an appellate court will not interfere unless an abuse of discretion clearly appears'" (*Martinez* v. *Harris* (1969) 273 Cal.App.2d 385, 397 [78 Cal.Rptr. 325]; *Mehling* v. *Schield* (1967) 253 Cal.App.2d 55, 59 [61 Cal.Rptr. 159]; *Thompson* v. *John Strona & Sons* (1970) 5 Cal.App.3d 705, 709 [85 Cal.Rptr. 350]).

■ Plaintiff here argues that a new trial should have been granted, as the evidence established negligence per se by the defendants. She opines that the undisputed evidence established that she was in the crosswalk when struck and that the jury was properly instructed on Vehicle Code section 21950, set forth below.[3] Plaintiff contends that whether she looked out for her own safety and whether the bus was an obstruction is immaterial to a consideration of whether or not defendants' negligence was established as a matter of law. Her argument is based on a misunderstanding of the test of negligence per se for the violation of the statute and the reciprocal duties of a motorist and pedestrian.

---

[3]"(a)   The *driver* of a vehicle *shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk* or within any unmarked crosswalk at an intersection, except as otherwise provided in this chapter.

"(b)   The *provisions of this section shall not relieve a pedestrian from the duty of using due care for his safety. No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close as to constitute an immediate hazard.*

"(c)   *The provisions of subdivision (b) shall not relieve a driver of a vehicle from the duty of exercising due care for the safety of any pedestrian within any marked crosswalk* or within any unmarked crosswalk at an intersection." (Italics added.)

Before 1965, former Vehicle Code section 560 set forth the right of way at crosswalks by stating that drivers should yield the right of way to a pedestrian crossing the roadway within either a marked or unmarked crosswalk. The 1965 amendment (Stats. 1965, ch. 1265, § 1) renumbered the section to its present number, 21950 and added former subdivision (b), which is now the second sentence of subdivision (b). The 1970 amendment (Stats. 1970, ch. 1001, § 1) clarified the reciprocal duties of the motorist and pedestrian by adding the present first sentence to subdivision (b), and adding subdivision (c). As usual, the legislative history does not offer much help as to the Legislature's specific purpose in enacting the 1965 and 1970 amendments. The 1965 amendment was requested by the California Highway Patrol and was intended to prevent pedestrians from asserting the right of way in an intersection when it is unsafe to do so (Review of Selected 1965 Code Legislation (Cont. Ed.Bar) p. 269). As to the 1970 amendment, our research has not disclosed any pertinent legislative history.

■ However, even prior to 1965, the cases were clear in rejecting the position that negligence is established as a matter of law solely upon the showing of the violation of a statute. Rather, the courts of this state have consistently held that negligence per se would be found for the violation *only* in the absence of a reasonable explanation for defendant's conduct (*Gray* v. *Brinkerhoff* (1953) 41 Cal.2d 180, 184 [258 P.2d 834]; *Novak* v. *Dewar* (1961) 55 Cal.2d 749, 752 [13 Cal.Rptr. 101, 361 P.2d 709]).

■ In *Alarid* v. *Vanier* (1958) 50 Cal.2d 617 [327 P.2d 897], the Supreme Court clarified the standard by holding the presumption of negligence which arises from the violation of a statute is rebuttable and may be overcome by evidence of justification. In determining whether the party has overcome the presumption the correct test is whether the violator of the statute has met the burden of showing that he did what might reasonably be expected of a person of ordinary prudence, who desired to comply with the law, acting under similar circumstances. Cases decided after 1965 continued to so hold (*Schmitt* v. *Henderson* (1969) 1 Cal.3d 460, 463 [82 Cal.Rptr. 502, 462 P.2d 30]; *LaManna* v. *Stewart* (1975) 13 Cal.3d 413, 427 [118 Cal.Rptr. 761, 530 P.2d 1073]). Plaintiff relies on *LaManna, supra,* in which our Supreme Court reaffirmed the basic rule allowing justification of the defendant's conduct and cited *Schmitt, Novak* and *Gray* as controlling. We note that in each of the above cases, the defendant struck a plaintiff who was attempting to cross a street at an intersection and the defendant testified

that he did not see the plaintiff until immediately before the impact. Thus, the above authorities are distinguishable from the one at bar. In *LaManna, Gray* and *Novak*, the court consistently rejected the defendants' attempt to justify their conduct because their attention to the crosswalk was temporarily diverted by another vehicle approaching the intersection; in *Schmitt*, the defendant offered no explanation. Thus, in each instance, the court concluded that the defendants had not met the burden of showing why they violated the duty of care which they owed to the pedestrian-plaintiff in the crosswalk.

In the instant case, the explanation of Larsen and Cousins is adequate; their respective views of the crosswalk were obstructed, respectively, by the pickup truck and the bus. Each responded to the possibility of a pedestrian in the crosswalk by easing off the accelerator, and when the crosswalk was apparently clear, each continued. When plaintiff suddenly appeared from behind the bus, Cousins immediately applied his brakes. Larsen also did so when he was alerted by the squealing of the brakes from Cousin's pickup. Thus, Larsen and Cousins provided ample substantial evidence from which the jury could have concluded that each of them did what a reasonable person would have done under similar circumstances. Each of these defendants had met the burden necessary to excuse the technical violation of the statute.

The pre-1965 cases were also consistent in placing the reciprocal affirmative duty of care on the pedestrian in a crosswalk: "It is the duty of a pedestrian to exercise reasonable care when crossing a street in a marked crosswalk, and to continue to be alert to safeguard against injury..." (*Jeffs* v. *LaGore* (1955) 131 Cal.App.2d 181, 185 [280 P.2d 140]; *O'Brien* v. *Schellberg* (1943) 59 Cal.App.2d 764, 768 [140 P.2d 159]). This duty was codified in the 1965 amendment and has been followed subsequently (*Myers* v. *King* (1969) 272 Cal.App.2d 571, 580 [77 Cal.Rptr. 625]).

Clearly, the instant case is within the scope of Vehicle Code section 21950. While Cousins and Larsen technically violated the statute by striking plaintiff in the crosswalk, their conduct was justified under the circumstances. Plaintiff failed to exercise her statutory and case law duty of care and left a place of safety. The record reveals that she was familiar with the intersection and aware of the danger but did not take any precautions before stepping from behind the bus which she knew was obstructing the vision of approaching drivers on a busy boulevard.

■ When, as here, each motorist has acted reasonably and the pedestrian has failed to exercise due care for her own safety, the law of this state does not permit the technical violation of the pedestrian's right of way statute to impose negligence on the motorists as a matter of law. The statute creates a preferential, but not absolute, right in favor of the pedestrian who is still under a duty to exercise ordinary care (cf. *Titus v. Stouffer, supra*, 40 N.E.2d 178, 183).

We note that plaintiff presented no evidence of negligence or other liability on the part of the city. In closing argument, plaintiff's attorney stated that the city was negligent in the placement of its bus stopping zones but no testimony was presented on this issue. At trial, plaintiff primarily attempted to establish whether the bus stopped behind the bar marked on the street for this purpose, but did not request any instruction that would lead to a finding of liability for the failure to do so. On this appeal, plaintiff focuses on issues that only tangentially involve the city.

■ We hold, therefore, that the record does not establish an abuse of discretion by the trial court in denying plaintiff's motion for a new trial on grounds of insufficiency of the evidence, and that there was sufficient evidence from which the judge and the jury could conclude that there had been no negligence on the part of any of the defendants that was the proximate cause of the injuries incurred by plaintiff.

The judgment is affirmed.

Rouse, J., and Smith, J., concurred.