[No. A012110. First Dist., Div. Four. Sept. 11, 1984.]

KATHRYN BRACISCO et al., Plaintiffs and Appellants, v.
BEECH AIRCRAFT CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.[1]]**

[1]Only the introductory section, the facts section and part II of the Discussion are certified for publication.

1102

COUNSEL

Floyd A. Demanes, Gerald Clausen, Louis S. Francecke and Mack, Hazelwood, Franecke & Tinney for Plaintiffs and Appellants.

William H. Owen, Owen, Melbye & Rohlff, Robert S.Wolfe and Morris, Polich & Purdy for Defendant and Respondent.

OPINION

**PANELLI, J.**—Plaintiffs, surviving wife and children of decedent Eugene Bracisco, appeal from a judgment entered on a jury verdict in favor of defendant Beech Aircraft Corporation in a wrongful death action.

### *Facts*

This action arose from the death of Eugene Bracisco while piloting a Beechcraft C-35 Model Bonanza airplane. The accident occurred when Bracisco's plane crashed into a tree near his home on a flight from Hayward to Middletown on December 23, 1972. Bracisco's widow and children (plain-

tiffs) brought the instant wrongful death action alleging negligence and strict liability in tort against the plane's manufacturer, Beech Aircraft Corporation (Beech), its subsidiary Beechcraft West, Richard H. Dederian, owner of "Flight Care" airplane maintenance facility, and Shell Oil Company, supplier of the plane's gasoline.

The case proceeded to trial by jury. At the close of plaintiffs' case the trial court granted Shell Oil Company's motion for nonsuit. At the completion of the trial, the jury returned a verdict in favor of each of the remaining defendants, specifically finding Beech was not negligent or strictly liable for Bracisco's death. Plaintiffs appeal solely from the judgment entered in favor of Beech on the strict liability claim which was premised on the charge the plane was defectively designed.

Evidence introduced at trial can be summarized as follows: Bracisco worked in San Francisco and would fly home to Middletown on the weekends. It was his custom, upon arriving in Middletown, to circle the valley where his house was located before landing at the local airport. On the day of the accident several witnesses saw and heard Bracisco's plane before it crashed. Bracisco's plane approached the valley in a descending left turn. There was conflicting testimony regarding whether or not the plane's engine was fully audible during Bracisco's descent. Some witnesses testified they could hear the engine, but it was running slow, decelerating. One of these witnesses testified there was a sudden surge of engine power split seconds before the crash. At least one eyewitness testified the plane's engine was clearly audible at full power during its descent.

Expert testimony regarding the cause of the crash was also in conflict. Plaintiffs' expert testified the accident occurred as a result of "unporting" of the left fuel tank during the plane's descending left turn, resulting in a loss of engine power. "Unporting" occurs when the plane's nose is allowed to drop below the horizon and the fuel sloshes forward in the tank and away from the fuel line port or pickup outlet leading to the engine. The resulting diminishing fuel supply causes the engine to slow down, idle and eventually stop. Under this theory, Bracisco struggled during his descent to get fuel back to the engine but succeeded in doing so only moments before impact. Plaintiffs claimed "unporting" occurred due to defective design of the plane's fuel tanks. They also claimed Beech was aware the unporting problem rendered the plane unsafe, but failed to give adequate instructions, directions or warnings in this regard.

Beech's experts opined the cause of the crash was an "accelerated stall" from which Bracisco was unable to recover. A "stall" in aeronautical terms refers to a situation where a plane moves too slowly to maintain adequate

lift on the wings so that the plane begins to fall rather than fly or glide. An "accelerated stall" occurs when as the result of a sharp turn, centrifugal force makes the plane "heavier" and the minimum speed needed to keep the wings lifted is increased. Failing to maintain the needed speed under the circumstances resulted in the crash. Beech's position was that the crash was not caused by defective design but by Bracisco's error in piloting the plane.

In instructing the jury, the trial court gave a modified version of BAJI No. 2.60[2] regarding plaintiffs' and defendants' burden of proof for each of the alleged strict liability and negligence claims. This instruction was followed by a modified version of BAJI No. 9.00.5 defining design defect,[3] and by plaintiffs' special instruction No. 22[4] providing a product is defective if warnings are required in order to make it safe and these are not given.

Plaintiffs' principal contention on appeal is that the version of BAJI No. 2.60 which the court gave the jury erroneously stated plaintiffs' burden of

---

[2]BAJI No. 2.60 as modified provided with respect to the strict liability claim: "In this action, in the claim against defendant Beech Aircraft Corporation that the product in question was defective, the plaintiff has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issues: [¶] 1. That the manufacturer of the product in question was Beech Aircraft Corporation. [¶] That the product failed to perform as safely as an ordinary consumer of the product would expect. [¶] 3. That instructions, directions or warnings were required in order to render the product safe, when used in a manner reasonable [*sic*] foreseeable and if required, that there was a failure to give such instructions, directions or warnings. [¶] 4. That the defect in design existed when the product left the defendant's possession. [¶] 5. That the design of the product was a proximate cause of the death of the decedent. [¶] 6. That the product was used in a manner reasonably foreseeable by the defendant. [¶] 7. The nature and extent of plaintiffs damages. [¶] The defendant Beech Aircraft Corporation has the burden of establishing by a preponderance of the evidence all of the facts necessary to prove the following issue: [¶] 1. That in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design."

[3]BAJI No. 9.00.5 as modified provided the following: "The Manufacturer of a product is liable for the death of a decedent a proximate cause of which was a defect in its design which existed when it left possession of defendant provided that the death of the decedent resulted from a use of the product that was reasonably foreseeable by the defendant. [¶] A product is defective in design: (1) if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if the plaintiff proves that the product's design proximately caused the death of the decedent and the defendant fails to prove, in light of the relevant factors, that on balance the benefits of the challenged design outweigh the risk of danger inherent in such design. [¶] In determining whether the benefits of the design outweigh such risks you may consider, among other things, the gravity of the danger posed by the design, the likelihood that such danger would cause damage, the mechanical feasibility of a safer alternate design at the time of manufacture, the financial cost of the improved design, and the adverse consequence to the product and the consumer that would result from an alternate design."

[4]Plaintiffs' special instruction No. 22 reads as follows: "A product is also defective in design if a product reasonably requires instructions, directions or warnings in order to render the product safe when used in a manner reasonably foreseeable and there is a failure to give such instructions, directions or warnings."

proof regarding defective design under *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 432 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]. They claim this error was prejudicial and requires reversal in light of the instruction's misleading effect, Beech's counsel's reliance upon it in his closing argument, and the fact there was a great degree of conflict in the evidence regarding defective design. We find this contention meritorious.

*Discussion*

I. *Waiver of error.**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

II. *BAJI No. 2.60, as given, was prejudicial.*

█   Our Supreme Court in *Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413, held a product may be found defective in design under either of two alternative tests: "First, . . . if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Second, . . . if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." (*Id.,* at p. 432.)

█   In the present case, the version of BAJI No. 2.60 given to the jury listed seven issues which plaintiffs had the burden of establishing by a preponderance of the evidence. It also stated defendant Beech had the burden to show the benefits of the challenged design outweighed its concomitant risks. More importantly, it did not, however, specify that *not all* of the seven listed elements need be proven by the plaintiffs in order to establish a prima facie case of defective design.[6] It also failed to specify under what circumstances the burden shifts to defendant to show the benefits inherent in the defective design outweigh its risks. Although BAJI No. 2.60 abstractly listed each party's burden of proof, it failed to put the listed issues into perspective under *Barker's* alternative defective design tests. This failure to

---

*See footnote 1, *ante,* page 1109.

[6]For example, the instruction's language could reasonably mislead the jurors into believing that unless each one of the listed issues had been proven by a preponderance, plaintiffs had not carried their burden to show defective design. Yet under *Barker* plaintiff must show the product *either* failed to satisfy ordinary consumer expectations as to safety in its intended or reasonably foreseeable operation *or* that the product's design proximately caused the injury, but *not both.*

correctly allocate the prescribed burdens rendered the given instructions erroneous and misleading. The instruction given by the court imposed upon plaintiffs a burden of proof on the issues more onerous than that which they were otherwise required to meet.

■ We must now determine whether this instructional error was prejudicial. Error is considered prejudicial "[w]here it seems probable that the jury's verdict may have been based on the erroneous instruction. . . ." (*Robinson* v. *Cable* (1961) 55 Cal.2d 425, 428 [11 Cal.Rptr. 377, 359 P.2d 929]; *Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353].) Whether "the probable effect of the instruction has been to mislead the jury . . . depends on all the circumstances of the case, including the evidence and the other instructions given." (*Butigan* v. *Yellow Cab Co.* (1958) 49 Cal.2d 652, 660-661 [320 P.2d 500, 65 A.L.R.2d 1]; *Henderson* v. *Harnischfeger Corp., supra,* 12 Cal.3d at pp. 670-671; see also *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 72 [137 Cal.Rptr. 863, 562 P.2d 1022].)

"While there is no precise formula for measuring the effect of an erroneous instruction [citation], a number of factors are considered in measuring prejudice: (1) the degree of conflict in the evidence on critical issues [citations]; (2) whether respondent's argument to the jury may have contributed to the instruction's misleading effect [citation]; (3) whether the jury requested a rereading of the erroneous instruction [citation] or of related evidence [citation]; (4) the closeness of the jury's verdict [citation]; and (5) the effect of other instructions in remedying the error [citations]." (*LeMons* v. *Regents of University of California* (1978) 21 Cal.3d 869, 876 [148 Cal.Rptr. 355, 582 P.2d 946].)

■ Mindful of these principles we proceed to review the case at bar. Initially we note the evidence introduced at trial was particularly conflicting on the determinative issues necessary to prove defective design: whether the plane failed to satisfy ordinary consumer expectations as to safety in its intended or reasonably foreseeable operation; whether safety instructions or warnings regarding the alleged defectively designed fuel tank were required, and if so whether they were given; and whether the alleged defective design was the proximate cause of the crash. In this context we note that although the jury was given a special verdict, only one of these theories of defective design (whether defective design was the proximate cause of decedent's death) was presented to it.[7] It is impossible to estimate how the

---

[7]The only special verdict issue dealing with defective design was the following: "ISSUE No. 1. Was there a defect in design of the product involved in this case when it left the possession of the defendant Beech Aircraft Corporation which was a proximate cause of the death of the decedent when it was being used in a manner reasonably foreseeable by said defendant?"

jury would have resolved the other defective design issues had it been properly instructed on the burden of proof law and specifically asked to resolve them. In such circumstances the court " 'should not speculate upon the basis of the verdict.' [Citations.]" (*Luque* v. *McLean* (1972) 8 Cal.3d 136, 147 [104 Cal.Rptr. 443, 501 P.2d 1163]; *Barton* v. *Owen* (1977) 71 Cal.App.3d 484, 507 [139 Cal.Rptr. 494].)

We next note Beech's counsel's closing argument intensified the detrimental potential of the erroneous instruction. Counsel not only read to the jury the portion of the improper instruction pertaining to plaintiff's burden of proving the seven listed issues (see fn. 2, *ante*), but structured his whole closing argument around these issues referring to them cumulatively without mentioning *Barker's* alternative defective design tests.[8] In light of this argument and the giving of modified BAJI 2.60, it is very probable the jury could have been misled into believing plaintiffs could not establish a case of defective design unless each one of the seven listed issues had been proven by a preponderance of the evidence. As aptly noted in *Moreno* v. *Fey Manufacturing Corp.* (1983) 149 Cal.App.3d 23, 27-28 [196 Cal.Rptr. 487], "[a]ll instructions to the jury are important, so that careful and conscientious jurors can apply the proper law to the facts they find to have been proven. However, few instructions are of greater importance than that which informs the jury which party bears the burden of proof on the issues in dispute."

We lastly look at the effect of other instructions in curing the error. Modified BAJI No. 9.00.5 correctly instructed the jurors on *Barker's* alternative tests (see fn. 2, *ante*), and plaintiffs' special instruction No. 22 correctly defined defective design in terms of failure to give required safety warnings (see fn. 3, *ante*). While these instructions correctly stated the law, they did not cure the error, since they did not address the issue of plaintiffs' burden of proof. Furthermore, to the extent these instructions could be interpreted to refer to plaintiffs' burden of proof, they presented the jury with inconsistent and confusing statements of the law vis-à-vis modified BAJI No. 2.60. We cannot assume the jury ignored modified BAJI No. 2.60 and based its defective design verdict solely on these other correct statements of the law. " 'The prejudicial effect of a *misstatement* of an *important principle of law* cannot easily be overcome by another declaration contradicting it. The jury are bound (and so instructed) to accept the court's instructions as correct statements of the law. . . . They are likely to be confused and misled by the conflicting statements, and it is not easy to determine which charge

---

[8]The combined misleading effect of Beech's closing argument and the erroneous instruction was acknowledged by the trial court during chambers discussions held after Beech's closing argument but before the jury was instructed.

controlled their determination.'" (*Henderson* v. *Harnischfeger Corp.*, *supra*, 12 Cal.3d at p. 673, italics in original.)

In light of these factors and our examination of the entire record, we conclude the probable effect of the erroneous instruction was to mislead the jury. Accordingly, we conclude the error was prejudicial and the judgment should be reversed on the strict liability cause of action.

III. *Negligence per se instructions.* *

. . . . . . . . . . . . . . . . . . . . . . .

Judgment in favor of defendant Beech Aircraft Corporation on the strict liability cause of action is reversed.

Poché, Acting P. J., and Travis, J.,† concurred.

A petition for a rehearing was denied October 10, 1984, and respondent's petition for a hearing by the Supreme Court was denied December 12, 1984.

---

*See footnote 1, *ante,* page 1101.
†Assigned by the Chairperson of the Judicial Council.