[No. G007774. Fourth Dist., Div. Three. June 29, 1990.]

MORRIS BERNAL et al., Plaintiffs and Appellants, v.
RICHARD WOLF MEDICAL INSTRUMENTS CORPORATION,
Defendant and Respondent.

**COUNSEL**

Yuhl & Faber and Michael J. Faber for Plaintiffs and Appellants.

La Follette, Johnson, De Haas & Fesler and Robert E. Kelly, Jr., for Defendant and Respondent.

**OPINION**

**TAYLOR, J.**[*]—Plaintiffs Morris and Rosie Bernal appeal from a judgment for Richard Wolf Medical Instruments Corporation (Wolf) in their action for personal injuries. During Morris's knee surgery, arthroscopic scissors distributed and warranted by Wolf broke, causing the injury. Plaintiffs' case was predicated, in part, on a strict products liability theory for an allegedly defectively designed instrument, and on breach of warranty. On appeal, they raise instructional error. We reverse.

I

In March 1980, Wolf sold a pair of arthroscopic scissors to Mercy Hospital. In November 1984, Morris Bernal underwent arthroscopic knee surgery at Mercy. During the surgical procedure, a scissor blade broke off inside the knee joint, "floated away," and it became imperative to open up the entire knee joint to find it. As a result of the failure of the scissors during surgery, and the subsequent arthrotomy, Bernal developed sympathetic dystrophy. His condition will continue to deteriorate and he will probably require a future total knee replacement. Medical testimony indicated Bernal's problems were proximately caused by complications arising from the failure of the scissors during surgery.

_____
*Assigned by the Chairperson of the Judicial Council. This opinion was written and signed by Judge Taylor before his death on June 23, 1990.

Bernal and his wife sued Wolf on several theories, including strict products liability based on design defect and breach of express and implied warranties.[1]

Bernal's experts testified at trial the scissors broke due to a condition known as "stress corrosion cracking," resulting from a combination of design considerations.[2] The experts did not testify to a "defect" as such, nor did they testify that a reasonable alternative design was possible. At the conclusion of the evidence, the trial court instructed regarding the two tests for design defect as set forth in BAJI No. 9.00.5.[3]

In instructing the jury on Bernal's burden of proof with respect to the alleged design defect, the court gave the version submitted by Wolf, which read in toto as follows: "With respect to the existence of a defect in the design of the scissors, plaintiff must show by a preponderance of the evidence that a reasonable alternative design was possible, which would have avoided the breakage complained of."

Bernal contends this instruction is erroneous, in that it impermissibly places the burden on him to prove a safer alternative design. He further contends, although Wolf's manager testified the company warranted the scissors to be completely free of defects in material and workmanship, the trial judge refused to give any of Bernal's proffered jury instructions on warranty.

## II

 In a case of strict products liability based on a design defect, does the plaintiff have the burden of proving a reasonable alternative design was feasible? We conclude one does not.

We begin with *Baker* v. *Chrysler Corp.* (1976) 55 Cal.App.3d 710 [127 Cal.Rptr. 745]. There the court stated: "Requiring an injured plaintiff who

---

[1] Plaintiffs settled with the surgeon before trial. The case proceeded against Wolf on theories of products liability, warranty and negligence, and against Mercy Hospital on a theory of negligent maintenance. The Bernals do not appeal from the judgment for Mercy Hospital, or from the judgment for Wolf on the negligence cause of action.

[2] See *post*, page 1333.

[3] As given, BAJI No. 9.00.5 instructed: "The distributor of a product is liable for injuries [legally] caused by a defect in its design which existed when it left the possession of the distributor provided that they resulted from a use of the product that was reasonably foreseeable by the distributor. [¶] A product is defective in design: [if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner] [or] [if there is a risk of danger inherent in the design which outweighs the benefits of that design]. [¶] [In determining whether the benefits of the design outweigh such risks you may consider, among other things, the gravity of the danger posed by the design, the likelihood that such danger would cause damage, the mechanical feasibility of a safer alternate design at the time of manufacture, the financial cost of an improved design, and the adverse consequences to the product and the consumer that would result from an alternate design.]"

seeks damages against a manufacturer on the basis of strict liability in tort for a defective design to show that alternative designs for the product could reasonably have been developed does not enlarge plaintiff's burden of proof. An injured plaintiff has always had the burden to prove the existence of the defect. The reasonableness of alternative designs, where a design defect is claimed, is part of that burden." (*Id.*, at p. 716.) Thus, held the court, the burden was upon the injured plaintiff to establish that reasonable alternative designs are possible.

■ Two years later, however, our Supreme Court decided *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1]. There, the court articulated a two-pronged definition of design defect. The tests subsequently have become known as the "consumer expectation" test, and the "risk-benefit" test. The court stated: "[A] product may be found defective in design . . . under either of two alternative tests. First, a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Second, a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design." (*Id.*, at p. 432.)

■ Noting that past authorities had generally not devoted much attention to the appropriate allocation of the burden of proof, the Supreme Court (citing, inter alia, *Baker* v. *Chrysler Corp.*, *supra*, 55 Cal.App.3d at p. 716) remarked that the "burden is particularly significant [in that] one of the principal purposes behind the strict product liability doctrine is to relieve an injured plaintiff of many of the onerous evidentiary burdens inherent in a negligence cause of action. Because most of the evidentiary matters which may be relevant to the determination of the adequacy of a product's design under the 'risk benefit' standard—e.g., *the feasibility and cost of alternative designs* —are similar to issues typically presented in a negligent design case and involve technical matters peculiarly within the knowledge of the manufacturer, we conclude that *once the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective.*" (20 Cal.3d at p. 431, italics added.) ■ Among the "relevant factors" which the jury may consider, the court included the following: "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical *feasibility of a safer alternative design*, the financial cost of an improved design, and the adverse consequences to the product and to the

consumer that would result from an alternative design." (*Ibid.*, italics added.)

Nevertheless, the same year *Barker* was decided, the Second District, in *Garcia* v. *Joseph Vince Co.* (1978) 84 Cal.App.3d 868 [148 Cal.Rptr. 843], stated in a footnote: "*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413, did not alter the need for demonstrating the availability of reasonable alternate design, but simply shifted to defendant the burden of proving the unreasonableness of requiring an alternative in terms of such items as cost of producing the alternative product." (*Garcia* v. *Joseph Vince Co., supra,* 84 Cal.App.3d at p. 879, fn. 3.) This reference is the only authority, subsequent to *Barker,* Wolf can cite in support of its position.

We cannot agree the language or the rationale of *Barker* permits imposing the additional burden of proving a feasible alternative design upon an injured plaintiff. Indeed, the Supreme Court crafted the risk-benefit standard primarily to aid injured persons (*Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 802 [174 Cal.Rptr. 348]), and "to relieve [them] of many of the onerous evidentiary burdens inherent in a negligence cause of action." (*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d at p. 431.) Because evidentiary matters pertaining to design of the injury producing product, "e.g., *the feasibility and cost of alternative designs*"—are technical matters peculiarly within the manufacturer's knowledge, "once the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden [shifts] to the defendant to prove [ ] that the product is not defective." (*Ibid.*, italics added.) While *Barker* did not expressly overrule *Baker* v. *Chrysler Corp., supra,* 55 Cal.App.3d 710 on the burden of proof for alternative designs issue, it certainly did so by implication. Therefore, we must decline to follow *Baker* and the language of *Garcia* v. *Joseph Vince Co., supra,* 84 Cal.App.3d 868, which is based squarely upon it.[4] To satisfy the Barker risk-benefit test of design defect, a plaintiff is required to prove only that the design of the product was a proximate cause of the injury.[5]

While not cited to us by either party, the only case since *Barker* to directly address the issue of burden of proof for alternative design is *Pietrone* v. *American Honda Motor Co.* (1987) 189 Cal.App.3d 1057 [235

---

[4] While correctly applying the two alternative tests of *Barker,* an even later opinion has referred to the "risk-benefit" standard as the "safer alternative design test." (See *Williams* v. *Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 140 [229 Cal.Rptr. 605].) Such misdesignation merely confuses the burden of proof issue.

[5] Obviously, plaintiff must also prove the product was used in a reasonably foreseeable manner, that defendant manufactured or distributed or sold it, that the design was the same as when it left defendant's possession, and the nature and extent of claimed injuries to establish liability and recover damages.

Cal.Rptr. 137]. There, the same division that published the footnote (quoted *ante*) in *Garcia* v. *Joseph Vince Co., supra,* 84 Cal.App.3d 868 declined to follow it. In *Pietrone,* plaintiff presented no expert testimony of a reasonable alternative design. Nevertheless, the court stated: "In the instant case the evidence conclusively established that a design feature of Honda's product—the open, exposed, rotating rear wheel in close proximity to the passenger's foot pegs—was a proximate cause of plaintiff's injury. Without more, the burden then shifted to Honda to justify its adoption . . . of that particular design." (*Pietrone* v. *American Honda Motor Co., supra,* 189 Cal.App.3d at p. 1061.)

It is interesting to note the comment to BAJI No. 9.00.5 cautions: "When [the] court instructs [the] jury on the burden of proof in a products liability design defect case wherein plaintiff relies on [the] second prong of [the] test set forth in *Barker* v. *Lull Engineering Co.* [citation], the court should be careful to instruct [the] jury that plaintiff's burden of proof is only to show that the design of the product was the proximate cause of plaintiff's damage." (Com. to BAJI No. 9.00.5 (7th ed. 1986 bound vol.) p. 363.)

In this light, a review of Bernal's evidence demonstrates the following: Arthroscopic scissors were used during Bernal's knee surgery. While in the knee joint, a blade broke off, and it became necessary to open up the entire knee joint to find it. Plaintiff's experts testified the scissors broke due to a condition known as stress corrosion cracking, which resulted from a combination of factors, including: (1) the material selected for the scissors (series 420 martensitic stainless steel) which is susceptible to stress corrosion cracking, (2) the design of the scissors which produced "static tension stresses" created mainly by the pivot pin placement and (3) susceptibility to corrosion by chloride ions or salts, substances to which the scissors were likely to be exposed. With regard to the last factor, plaintiff's expert testified the design of the pin hole created an area peculiarly susceptible to the accumulation of chloride ions. And the product was distributed by Wolf.

 Thus, there is no question Bernal presented a prima facie case that the design of the scissors was a proximate cause of their failure during the surgical procedure, causing disability and the need for future surgery. That is all he had to prove. (See *Moreno* v. *Fey Manufacturing Corp.* (1983) 149 Cal.App.3d 23, 27 [196 Cal.Rptr. 487].) At that point, Wolf had the *burden of proof* to show that, on balance, the benefits of the design of the product as a whole outweigh the danger inherent in such design considering, among other enumerated "relevant factors," the feasibility of a safer alternate design.

We hold it was error to instruct the jury in the context of design defect that "plaintiff must show by preponderance of the evidence that a

reasonable alternative design was possible, which would have avoided the breakage complained of."

Wolf complains to so hold renders it an insurer of its surgical instruments.[6] Not so. Strict liability does not equate with absolute liability. Under the risk-benefit test, the defendant has the burden, and thus the opportunity, to highlight all of the benefits of its product's design before the jury. This would, of course, involve technical information peculiarly within its knowledge, and certainly more readily available to it. Among other things, the defense may show any alternate design would entail unreasonable costs, be uneconomic or impractical, interfere with the product's performance, or create other or increased risks. The case before us is a prime example. Here, the defense produced strong evidence the surgical instrument was made with the best steel available and was reasonably safe for its intended use, but had inherent dangers no human skill or knowledge has yet been able to eliminate. But for the erroneous burden of proof instruction, we would not hesitate to affirm the jury's verdict on this record.

Wolf argues vigorously, however, that *Baker v. Chrysler Corp., supra,* 55 Cal.App.3d 710, still mandates that plaintiff always has the burden to prove a "defect," whether by alternative design or not, and that Bernal's experts did not testify to a defect. The short answer is this: Accepting the premise, for the moment, that plaintiff has the burden to prove a "defect," the Supreme Court in *Barker* solved the riddle of defining "defect" by articulating its two-pronged test and holding once plaintiff proves the design caused the injury, the defect has been proven.

Decisions subsequent to *Barker* have addressed the matter more bluntly. For example, in *Moreno v. Fey Manufacturing Corp., supra,* 149 Cal.App.3d 23, the trial court instructed the jury " 'the plaintiff has the burden of establishing by a preponderance of the evidence . . . one, that the Fey bumper was defective in design . . . .' " (*Id.,* at p. 26.) Reversing for instructional error, the opinion states: "[W]e hold that when a plaintiff has made a prima facie showing that his injury was proximately caused by a product's design, it is reversible error to instruct the jury that plaintiff has the burden of proving that the product was defective in design." (*Id.,* at p. 25.) Stated another way, other cases have held once plaintiff's prima facie showing is made, the defendant has the burden to prove the product is not defective. (See *Lunghi v. Clark Equipment Co.* (1984) 153 Cal.App.3d 485, 497 [200 Cal.Rptr. 387]; accord *Grimshaw v. Ford Motor Co., supra,* 119 Cal.App.3d 757, 802.) After all, this is precisely what the Supreme Court observed in *Barker.* (*Barker v. Lull Engineering Co., supra,* 20 Cal.3d at

---

[6] For a full discussion, see (dis. opn. of Roth, P. J.) *Pietrone v. American Honda Motor Co., supra,* 189 Cal.App.3d at pages 1064-1071.

p. 431.) It is not the plaintiff's burden to show, under the risk-benefit analysis, that the risks involved in the design outweigh its benefits. (*Lunghi* v. *Clark Equipment Co., supra,* 153 Cal.App.3d at pp. 497-498.)

Wolf further contends that, even if the given instruction wrongly imposes the burden of proof of alternative design on Bernal, it, Wolf, did in fact prove the benefits of the design of the surgical scissors outweighed the risks thereof and thus, no prejudice resulted. Be that as it may, this in no way mitigates the instructional error placing the burden of proving a safer alternative design on the plaintiff.

While "[a]ll instructions to the jury are important, so that careful and conscientious jurors can apply the proper law to the facts they find to have been proven[,] . . . few instructions are of greater importance than that which informs the jury which party bears the burden of proof on the issues in dispute. Here, on the crucial issue in the case, the instruction given imposed a burden of proof on [plaintiff] he was not bound to meet." (*Moreno* v. *Fey Manufacturing Corp., supra,* 149 Cal.App.3d at pp. 27-28.) The jury's special verdict finding no defect in the design of the surgical instrument quite likely resulted from their following the court's instructions. It may well have determined the issue of design defect adversely to Bernal because he did not sustain his purported burden of proof regarding a safer alternative design. Because of this, we can only conclude that the error was prejudicial. (*Ibid.*; *McGee* v. *Cessna Aircraft Co.* (1983) 139 Cal.App.3d 179, 190 [188 Cal.Rptr. 542].) Erroneously placing this burden of proof upon the plaintiff, even where the evidence on the defective design issue appears to favor the defense, cannot be harmless error. (*Moreno* v. *Fey Manufacturing Corp., supra,* 149 Cal.App.3d 23.)

To make matters worse, the erroneous instruction was exploited to the fullest by Wolf's attorney. During closing argument to the jury, he stated: "This is what [the judge] is going to read in this area. [¶] He's going to say, 'with respect to the existence of a defect in the design of the scissors, plaintiff must show by a preponderance of the evidence that a reasonable alternative design was possible which would have avoided the breakage complained of' . . . . [¶] What Dr. Fowler said was that there are three things about the design of this scissors which led to its failure . . . [¶] . . . I asked him five times in a row, 'Well, doctor, do you have any alternative to making the scissors in any way other than the way it is made?' And you were here and you saw us dance together for about five minutes, and finally he sort of grudgingly admitted he didn't have any other way to do it." And further to the jury: "But the basic problem with [ ] Dr. Fowler's approach is that the law requires that he show a reasonable alternative design . . . which would avoid the breakage. If you know of a reasonable alternative

design which Dr. Fowler testified to, I would appreciate your letting me know about it . . . ."

Clearly, Wolf's counsel effectively hammered home to the jury that Bernal had failed to carry his purported burden to prove a reasonable alternative design was possible. It was the only instructional guidance on burden of proof the jury had. ■ Error is considered prejudicial where it seems probable the jury verdict may have been based on the erroneous instruction. (*Henderson* v. *Harnischfeger Corp.* (1974) 12 Cal.3d 663, 670 [117 Cal.Rptr. 1, 527 P.2d 353]; *Bracisco* v. *Beech Aircraft Corp.* (1984) 159 Cal.App.3d 1101, 1107 [206 Cal.Rptr. 431].) ■ And even though BAJI No. 9.00.5 correctly instructed the jury on *Barker*'s two alternative tests, it did not cure the error since it did not address the issue of plaintiff's burden of proof. (See *Bracisco* v. *Beech Aircraft Corp.*, *supra*, 159 Cal.App.3d at p. 1108.) The instructional error was prejudicial by any measure, and requires reversal.

Because we are unaware of any case setting forth a correct burden of proof instruction for design defect, for the guidance of the parties on retrial we take the opportunity now to do so. Since the trial court instructed on both the "consumer expectation" test and the "risk-benefit" test in the words of BAJI No. 9.00.5, an appropriate modification of BAJI 2.60 would read:[7] "A. Plaintiff claims the scissors were defective in design because they failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Therefore, plaintiff has the burden of proving by a preponderance of the evidence all the facts necessary to show: (1) that Wolf was the distributor of the product; (2) that the design of the product that injured plaintiff was the same as the design of the product when it left the Wolf's or defendant's possession;[8] (3) that the product failed to perform as safely as an ordinary consumer of that product would expect; (4) that the design of the product was a proximate cause of plaintiff's injury (5) that the product was used in a manner reasonably foreseeable by the defendant; and (6) the nature and extent of plaintiff's injuries. [¶] B. Plaintiff also claims the scissors were defective in design because the risk of danger inherent in the design outweighs the benefits of that design. Therefore, plaintiff has the burden of proving by a preponder-

---

[7] We have borrowed freely from the BAJI No. 2.60 modification suggested in the Use Note following BAJI No. 9.00.5 (7th ed. 1986) page 361. Strangely, the parties ignored, or, more likely, overlooked this helpful guidance. While BAJI No. 9.00.5 was both requested and given in its entirety, no burden of proof instruction whatsoever was requested or given regarding the consumer expectations test. Also, see *Bracisco* v. *Beech Aircraft Corp.*, *supra*, 159 Cal.App.3d at page 1105, footnote 2, for an incorrect use of BAJI No. 2.60 as modified.

[8] We disagree with the language suggested by the BAJI committee as to this element of proof. (See *Lunghi* v. *Clark Equipment Co.*, *supra*, 153 Cal.App.3d 485.) The principle is the same with respect to both the consumer expectation and risk-benefit alternatives.

ance of the evidence all the facts necessary to show: (1) that Wolf was the distributor of the product; (2) that the design of the product that injured plaintiff was the same as the design of the product when it left Wolf's possession; (3) that the design of the product was a proximate cause of plaintiff's injury; (4) that the product was used in a manner reasonably foreseeable by the defendant; and (5) the nature and extent of plaintiff's injuries.

"Since plaintiff claims the risk of danger inherent in the design outweighs the benefits of that design, defendant has the burden of proving by a preponderance of the evidence all of the facts necessary to show: (1) that, on balance, the benefits of the design of the product[9] as a whole outweigh the risk of danger inherent in such design. In making such determination, you may consider, among other things, the gravity of the danger posed by the design, the likelihood that such danger would cause damage, the mechanical feasibility of a safer alternate design at the time of manufacture, the financial cost of an improved design, and the adverse consequences to the product and the consumer that would result from an alternate design."

■ Wolf also contends that the instructional issue was waived. He misreads the record. The trial judge expressly invited both counsel to submit burden of proof instructions in the format of BAJI No. 2.60. Inexplicably, Bernal's attorney never bothered to submit a proposed burden of proof instruction on design defect in writing. But he did object orally to the erroneous instruction proferred by Wolf and suggested a modification shifting the burden to the defendant. Counsel's objection and orally proposed modification adequately preserved the error for appeal.

### III

■ Bernal also contends the court erred in refusing his proferred instructions on breach of express[10] and implied warranties, including the implied warranty of fitness for use. Wolf admits the warranties, but asserts there was no evidence the warranties were breached.

■ "[A] litigant is entitled to instructions on every theory advanced by him which finds support in the evidence." (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 543 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158],

---

[9] Again, we disagree with language suggested by the BAJI committee. The suggested language reads: "that the benefits of *the product* as a whole outweigh the danger inherent in such design." The emphasis should be on balancing benefits of the *design* of the product (as opposed to the product itself) against the risk of danger inherent in the design. This emphasis is found specifically in *Barker* v. *Lull, supra,* 20 Cal.3d at pages 432, 435, wherein the Supreme Court refers to balancing "benefits of the challenged design" against the risks thereof. It is not a question of the societal value of the product in the abstract.

[10] The express warranty was against defects in materials and workmanship.

italics omitted; *Phillips* v. *G.L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33].) ■ "The evidence necessary to justify the giving of an instruction need not be overwhelming . . . [but] may be slight . . . or even opposed to the preponderance of the evidence." (*Byrne* v. *City and County of San Francisco* (1980) 113 Cal.App.3d 731, 737 [170 Cal.Rptr. 302].) ■ In reviewing the propriety of a requested instruction, we view the evidence in the light most favorable to the party proposing it. (*Anderson* v. *Latimer* (1985) 166 Cal.App.3d 667, 674 [212 Cal.Rptr. 544]; *Alvarez* v. *Felker Mfg. Co.* (1964) 230 Cal.App.2d 987, 998 [41 Cal.Rptr. 514].)

■ The arthroscopic scissors failed during Bernal's knee surgery while being used precisely for their intended purpose. The break resulted from "stress corrosion cracking," caused in turn by several factors, including design considerations, and the materials used in manufacturing the scissors. There was no evidence of their misuse or abuse. On this record, we find sufficient support for the warranty instructions. To refuse them was error.

We acknowledge Bernal relies on the same facts to support both his strict products liability and warranty causes of action. If the jury had been correctly instructed on strict products liability, and had returned a special verdict finding no defect in the product, the trial court's erroneous refusal to instruct on warranty would not be reversible. (*Brown* v. *Superior Court* (1988) 44 Cal.3d 1049, 1072 [245 Cal.Rptr. 412, 751 P.2d 470]; *Lunghi* v. *Clark Equipment Co., supra,* 153 Cal.App.3d 485, 493-494.) As the matter stands, however, instructions on the warranty theory are required.

Judgment reversed and remanded for retrial on the issues of strict liability and warranties. Costs awarded to appellant.

Wallin, J., and Sonenshine, Acting P. J., concurred.