[No. AO14969. First Dist., Div. Three. Mar. 22, 1984.]

JANINE MARIE LUNGHI, a Minor, etc., et al.,
Plaintiffs and Appellants, v.
CLARK EQUIPMENT COMPANY, INC., Defendant and Respondent.

486

COUNSEL

Abramson & Smith, William B. Smith and Daniel U. Smith for Plaintiffs and Appellants.

Bronson, Bronson & McKinnon and David W. Gordon for Defendant and Respondent.

OPINION

**WHITE, P. J.**—This appeal is from a judgment based on a jury verdict in favor of defendant Clark Equipment Company, Inc. (Clark), manufacturer

of a Bobcat front-end model 440 loader, in a wrongful death action brought by the survivors of a man (Lunghi) who was crushed to death in August 1976 by the descending boom and bucket of a Bobcat front-end model 440 loader when he tried to rescue a fellow employee (Perez) whose hand had become trapped in the loader's framework while he was trying to repair a battery. The loader was manufactured by the Melrose Company, which had been purchased by Clark in 1969. The jury returned a special verdict with a 10-to-2 vote that there was no defect in the design of the loader.

The issues on appeal are whether the trial court erred in: (1) refusing to allow plaintiffs to introduce testimony of an expert who had been hired by defendant and deposed during discovery but not called by defendant to testify during trial; (2) refusing to give plaintiffs' requested jury instructions on the manufacturer's liability for negligence; (3) refusing plaintiffs' request to instruct the jury on the consumer expectations aspect of strict liability; and (4) altering the instruction on burden of proof in strict liability.

Further facts will be discussed as they are relevant to the specific issues raised.

1. *The trial court's refusal to allow appellants to introduce testimony by respondent's expert witness was error.*

Clark notified appellants before the trial that they intended to call Martin J. Siegel as an expert witness. Appellants accordingly deposed Mr. Siegel. Subsequently Clark decided not to call Mr. Siegel to testify.

Appellants sought to call Mr. Siegel themselves, or to introduce his deposition testimony. The trial court refused this request, though it allowed appellants to recover the costs of having taken Mr. Siegel's deposition.

Appellants now argue that Mr. Siegel's testimony was relevant evidence that they were entitled to introduce, and that they were prejudiced by its exclusion. We agree.

Respondents cite no legal authority to justify the exclusion. Essentially they contend only that appellants were not prejudiced by the exclusion.

The erroneous exclusion of admissible evidence requires reversal only if the reviewing court is of the opinion, after examining the entire record, that it is probable that a result more favorable to appellants would have been reached absent the error. (Code Civ. Proc., § 475.)

In the instant case, the primary focus of the jury must have been on the expert testimony. This was so because the trial court's refusal to instruct

on negligence left the jury considering only strict liability for a design defect. (See discussion of the negligence instruction issue, *post* at pp. 491-494) And in the context of design defect, the jury was properly instructed to consider only the risk-benefit analysis for determining whether there was a defect. (See discussion of defect instruction *post* at pp. 494-495.) In this sort of analysis, the jury necessarily relies heavily on the testimony of experts. (See *Campbell* v. *General Motors Corp.* (1982) 32 Cal.3d 112 [184 Cal.Rptr. 891, 649 P.2d 224]; *DeLeon* v. *Commercial Manufacturing & Supply Co.* (1983) 148 Cal.App.3d 336, 348 [195 Cal.Rptr. 867].)

Appellants presented their own expert's testimony to establish negligence and a design defect. One theory was that a certain kind of wire mesh cage should have been placed on the loader as standard equipment, positioned so that a person could not reach into the "pinch points" area, where there was known to be a risk of getting caught as Mr. Perez had. (See *Hasson* v. *Ford Motor Co.* (1982) 32 Cal.3d 388, 400 [185 Cal.Rptr. 654, 650 P.2d 1171].) During deposition, Mr. Siegel was asked whether he would have put "some sort of cage with side screens" on the loader as standard equipment. His reply was, "I would have recommended such a thing, yes." He also said, "Generally an enclosure that we find today and that we know today is a good idea. I personally like them. In answer to your question, as an engineer I like them."

Appellants also presented expert testimony to establish negligence and design defect through Clark's failure to place a warning on the loader itself, about the hazard created by leaving the machine turned off with the bucket and boom arms up. (See *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 349-350 [157 Cal.Rptr. 142]; *Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d at pp. 397-398.) During deposition, Mr. Siegel was asked whether he would have put a warning on the loader in the vicinity of the operator, saying something like, " 'Do not enter or exit this machine when the bucket is raised'[.]" He replied, "I think I would have put such a warning on, yes."

The record indicates that the trial court excluded this evidence apparently because it believed that the expert's opinions were protected as attorney work product. This was clearly a mistaken belief. Code of Civil Procedure section 2016, subdivision (b) affirms the principle that an attorney's work product is not subject to discovery. But that principle is simply not relevant to the testimony of an expert, after one party has notified the other that the expert is likely to be called at trial, as in the instant case. (See, Jefferson, Cal. Evidence Benchbook (1972) § 41.1, pp. 701-702.)

It is clear that Dr. Siegel's opinions were relevant and admissible. The trial court's exclusion of this evidence was erroneous. It is also apparent

that the substance of the deposition testimony was cumulative. We cannot say that its inclusion would probably have resulted in a decision more favorable to appellants.

Appellants argue that the exclusion of Dr. Siegel's testimony was so prejudicial that it requires reversal. They contend that they "could have made much" of his testimony because he had originally been retained by respondent. It is not clear, however, whether this information, as opposed to the substance of Dr. Siegel's opinions, would have been admitted.

In any case, we need not decide whether this information should have been admitted, nor whether its exclusion was prejudicial, since there are other grounds for reversal.

2. *The refusal to instruct the jury on negligence, and failure to warn as constituting a design defect, was reversible error.*

■ The Supreme Court has "consistently observed that a litigant is entitled to *instructions* on every theory advanced by him which finds support in the evidence." (*Hasson* v. *Ford Motor Co.* (1977) 19 Cal.3d 530, 543 [138 Cal.Rptr. 705, 564 P.2d 857, 99 A.L.R.3d 158], original italics; *Truman* v. *Thomas* (1980) 27 Cal.3d 285, 295 [165 Cal.Rptr. 308, 611 P.2d 902]; *Phillips* v. *G. L. Truman Excavation Co.* (1961) 55 Cal.2d 801, 806 [13 Cal.Rptr. 401, 362 P.2d 33]; *Bolen* v. *Woo* (1979) 96 Cal.App.3d 944, 952 [158 Cal.Rptr. 454].)

■ In the instant case the trial court refused plaintiffs/appellants' request that it instruct the jury on the issue of defendant's negligence. ■ This refusal was error if there was evidence to support a cause of action in negligence (*Hasson* v. *Ford Motor Co., supra,* 19 Cal.3d at p. 543) and if, considering all the instructions as a whole, appellants were deprived of this theory of recovery. (*Bolen* v. *Woo, supra,* 96 Cal.App.3d at p. 952.)

■ Appellants argue that they had presented evidence of Clark's negligence in several respects. They presented evidence that the manufacturer was aware that the Bobcat model 440 loader was sometimes left with its boom arms up at the worksites where it was being used, and that operators did in fact enter and exit the loader with the boom arms in that position. They also presented evidence that when a person entered the loader left in that position, there was risk that the person would hit the foot pedal which would lower the boom arm. There was deposition testimony by a Clark safety engineer that the company knew before the accident involving Lunghi, that the lowering of the boom arms created a hazard because of a "scissor action."

Appellants also presented evidence that certain mechanical safety devices were available that would have minimized the risk of injury from this scissor action, and that the manufacturer knew or should have known of these devices. These included a wire cage, a pedal cover, a "deadman's seat," and a seat bar lock. Appellants also presented expert opinion testimony that a warning about leaving the boom arms up ought to have been placed on the machine itself rather than only in the instruction/maintenance manual.

Appellants' request for negligence instructions was the subject of a two-hour discussion between the court and counsel, out of the presence of the jury and off the record. The court summarized its reason for refusing appellants' request on the record—namely the reasoning of *Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633 [105 Cal.Rptr. 890], and the court's understanding that if there is no defect in the machine, negligence in designing the machine could not be a basis for recovery.

*Balido* is a case which reversed a nonsuit where plaintiff had pled causes of action in strict liability, negligence, breach of warranty and intentional misconduct against the manufacturer of a concededly defective machine. The court held that neither a long interval of time between the deficiency and plaintiff's injury, nor the fact that the manufacturer had warned the machine's owners of the dangers present, justified a nonsuit. (*Id.*, at pp. 644, 649.) Rather, it was for the jury to decide whether in the particular case "that passage of time had broken the causation between deficiency and injury," (*id.*, at p. 644) and whether the manufacturer "had not done everything reasonably within its power to prevent injury to [plaintiff]." (*Id.*, at p. 649.) The *Balido* court said that it viewed the "separate counts" for negligence, strict liability and warranty as "stating a single cause of action," and that "the strict liability and negligence claims merge." (*Id.*, at p. 640.) It is unclear what this means in practical terms, since the court's reversal of nonsuit on the three causes of action left the plaintiff free to pursue any one or all of them. We can find nothing in *Balido* which would lead to the conclusion that jury instructions on each theory would not be required.

Moreover, in the instant case, the trial court's view that a finding of no defect would preclude recovery for negligence, while analytically correct, did not justify refusal of the instruction on negligence. At the point of giving instructions, the court could not assume that the jury would not find the loader defective. Had this question been resolved in appellants' favor, the jury might also have found that Clark was negligent in designing the machine.

■ "The evidence necessary to justify the giving of an instruction need not be overwhelming . . . [but] may be slight, inconclusive, or even op-

posed to the preponderance of the evidence." (*Byrne* v. *City and County of San Francisco* (1980) 113 Cal.App.3d 731, 737 [170 Cal.Rptr. 302].) ■ Since appellants presented evidence which would have supported a verdict under either a negligence or a strict liability theory (see *Hasson* v. *Ford Motor Co., supra,* 32 Cal.3d at pp. 397-398; see also *DeLeon* v. *Commercial Manufacturing & Supply Co., supra,* 148 Cal.App.3d 336; *Pisano* v. *American Leasing* (1983) 146 Cal.App.3d 194 [194 Cal.Rptr. 77]), they were entitled to jury instructions under each theory. The trial court's refusal to instruct the jury on negligence was an error.

This error, however, would not justify reversal in the usual case when the jury has returned a special verdict of "no defect." The Supreme Court, in *Truman* v. *Thomas, supra,* 27 Cal.3d 285, disapproved the trial court's refusal to instruct the jury on a physician's duty of reasonable disclosure, observing that, "[i]f the jury had been given this instruction *and had found in favor of the appellants,* such a finding would have had support in the record before us. Reversal is therefore required. [Citations.]" (*Id.,* at p. 295, italics added.)

By contrast, if the jury in the instant case had been properly instructed on design defect (see discussion, *post*), the general negligence instruction requested by appellants would have made no difference to the verdict. The jury entered a special verdict finding *no* "defect in design of the product involved." The following instruction on design defect had been given: "The designer and manufacturer of a product is liable for injuries a proximate cause of which was a defect in its design which existed when it left possession of defendant provided that the injury resulted from a use of the product that was reasonably foreseeable by the defendant. [¶] A product is defective in design unless the benefits of the design of the product as a whole outweigh the risk of danger inherent in the design. [¶] In determining whether the benefits of the design outweigh such risks you may consider, among other things, the gravity of the danger posed by the design, the likelihood that such danger would cause damage, the mechanical feasibility of a safer alternate design at the time of manufacture, the financial cost of an improved design, and the adverse consequences to the product and the consumer that would result from an alternate design."

Appellants could not expect to ground liability on a finding that Clark negligently designed a safe product. ■ In the usual case, where the jury has been *correctly instructed* on strict products liability, and has entered a special verdict finding no defect in the product, the trial court's erroneous refusal to instruct on negligence in designing the product is not reversible.

■ In the instant case, however, reversal is required in spite of the "no defect" finding because of the trial court's refusal to instruct the jury that

failure to warn or an inadequate warning may constitute a design defect. (*Temple* v. *Velcro USA, Inc.* (1983) 148 Cal.App.3d 1090, 1094 [196 Cal.Rptr. 531]; *Cavers* v. *Cushman Motor Sales, Inc., supra,* 95 Cal.App.3d at pp. 344-345; *Midgley* v. *S. S. Kresge Co.* (1976) 55 Cal.App.3d 67, 71-74 [127 Cal.Rptr. 217]; *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 53 [46 Cal.Rptr. 552]; see *Schelbauer* v. *Butler Manufacturing Co.* (1984) 35 Cal.3d 442 [198 Cal.Rptr. 155, 673 P.2d 743].)

The jury found no defect in the design of the product, but it did not know that the failure to warn could itself be a defect. If they had known this and had found that the Bobcat design was defective because there was no warning label on the machine, there would have been evidence in the record to support the finding—particularly if Mr. Siegel's testimony had been admitted as it should have been. (See discussion, *ante.*)

The special verdict finding no defect was entered in response to instructions which omitted an entire basis for finding a defect, on which evidence had been presented. It is therefore unreliable and should not protect respondent from liability. The trial court's refusal to instruct the jury that failure to warn may be a design defect is another ground for reversal.

In addition, appellants presented evidence on negligence quite apart from the design issue, pertaining to the "retrofit campaign." This was Clark's efforts to notify owners of the Bobcat (and the failure to notify the owner of the Bobcat involved in the instant case) about the dangerous propensities of the machine discovered after the machine had been on the market for awhile, and the availability of safety devices which the manufacturer would install.

Even if, properly instructed, the jury had found that none of the mechanical design features in issue (e.g., the "scissor action" problem, or the boom arm descending when a foot pedal was tripped when the machine was turned off) constituted a defect, it could still have found that Clark's knowledge of the injuries caused by these features imposed a *duty to warn* of the danger, and/or a *duty to conduct an adequate retrofit campaign.* A finding that Clark had not met the standard of reasonable care with regard to either of these duties would have had some support in the evidence, and would have been consistent with a finding that the product's design was not defective. Therefore the refusal to instruct on negligence was error and also justifies reversal. (*Truman* v. *Thomas, supra,* 27 Cal.3d at p. 295.)

On remand the trial court should instruct the jury on every theory which finds support in the evidence. (See *Hasson* v. *Ford Motor Co., supra,* 19 Cal.3d at p. 553.)

3. *The trial court's refusal to instruct the jury on the consumer expectations test for strict liability was not error.*

In *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1], the Supreme Court said that "a product is defective in design either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if, in light of the relevant factors discussed below, the benefits of the challenged design do not outweigh the risk of danger inherent in such design." (*Id.*, at p. 418.)

Appellants in the instant case requested BAJI No. 9.00.5 and a burden of proof instruction. The trial court struck the language from BAJI No. 9.00.5 which said that a product is defective if it "failed to perform as safely as an ordinary consumer of the product would expect when used in a manner reasonably foreseeable by the defendant[s]." The jury was therefore told only that "[a] product is defective in design unless the benefits of the design of the product as a whole outweigh the risk of danger inherent in the design."

Appellants' burden of proof instruction was also altered to delete reference to proving "[t]hat the product failed to perform as safely as an ordinary consumer of that product would expect."

The Supreme Court has explained that the "dual standard for design defect assures an injured plaintiff protection from products that either fall below ordinary consumer expectations as to safety or that, on balance, are not as safely designed as they should be." (*Barker* v. *Lull Engineering Co.*, *supra*, 20 Cal.3d at p. 418.)

Appellants argue that they were entitled to the consumer expectations test instruction under the criteria set out in *Campbell* v. *General Motors Corp.*, *supra*, 32 Cal.3d at page 127. (Hereafter, *Campbell.*) They contend that under *Campbell* it is only necessary for the plaintiff to show evidence of "(1) his or her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety." (*Id.*, at p. 127.)

But the Supreme Court clearly set a precondition for the use of these criteria. It said that this evidence would generally be sufficient, "*if the product is one within the common experience of ordinary consumers.*" (*Ibid.*, italics added.) In *Campbell,* the product involved was an ordinary city bus and expert testimony was unnecessary.

Appellants argue that the Supreme Court meant that only "scientific determinations" should be excluded from the consumer expectations test; they refer to the court's discussion of a case where expert testimony was required for a jury to evaluate what injuries sustained during a car crash would have been prevented by a seatbelt, when the car was traveling 40 miles an hour. (*Campbell, supra,* 32 Cal.3d at p. 125.)

Actually, the court reiterated a guideline established years ago for determining whether expert opinion evidence is necessary. ■ The proper focus is " 'whether the subject of inquiry is one of such common knowledge that [persons] of ordinary education could reach a conclusion as intelligently as the witness or whether, on the other hand, the matter is sufficiently beyond common experience that the opinion of an expert [is required].' (*People* v. *Cole* (1956) 47 Cal.2d 99, 103 . . . ; see Evid. Code, § 801.)" (*Campbell, supra,* 32 Cal.3d at p. 124.)

■ Appellants themselves identify the subject of inquiry in the instant case as "whether the user of a loader would expect that boom arms and bucket could descend with fatal crushing force when the loader is at rest with the engine off." This does not seem to be the kind of question that twelve ordinary people drawn from the community at large could evaluate based on their own "common knowledge." The "user of a loader" is distinguishable from "ordinary consumers." (*Campbell, supra,* at p. 127.) Frankly, we think that an ordinary consumer would not know what to expect from a piece of heavy machinery like the Bobcat loader, even if the engine was turned off.

Since appellants asked for the consumer expectation instruction based on the lay testimony they had presented, rather than on expert opinions, the trial judge's refusal to give the instruction was correct.

On remand, appellants are free to present evidence in the form of expert opinions on the reasonable expectations of consumers of the product involved here, which is outside the experience of ordinary consumers.

4. ■ *The jury instructions on burden of proof stated the law incorrectly.*

Appellants requested that the jury be instructed that plaintiffs had the burden of establishing, under the theory of strict liability, "[t]hat the defect in design existed when the product left the defendant's possession. . . ."

Respondents argue that the record does not show that this instruction was actually altered by the trial judge. It is true that the court reporter tran-

scribed the instruction twice, each time recording the judge's words as including the phrase, "the defect," as requested. The instruction was given the first time along with all the other instructions, in a routine manner. The second time, the court repeated the instruction at the request of both counsel. When the judge finished this second reading of the instruction, he asked whether counsel were "satisfied." Respondent's attorney replied that he was. Appellants' attorney replied ambiguously, "With what we talked about in the back." The court said, "That's what I meant." And appellants' counsel said, "Fine." This short colloquy after the second reading is of no help since this court does not know what had previously been discussed "in the back."

But the record also shows that the judge made an alteration on the typewritten instruction, striking the word "the" before the word "defect," and substituting the word "a." Also, counsel and the court discussed this change in the absence of the jury *after* the instruction had been given twice, and the judge said, ". . . I think that the second item, namely the one that reads that the defect in design existed when the product left the Defendant's possession assumes, begs the question, that such a defect did exist and I can't imagine that being the law and so I changed it. And I think that if there is some law that you feel as to the contrary, it would require something more than a change of 'A' to 'The'."

Thus, we can conclude from the record that the jury *was* told that the plaintiffs had the burden of establishing by a preponderance of the evidence that "*a* defect in design existed when the product left the defendant's possession." (Italics added.)

Appellants argue that this improperly shifts the burden to them. They assert that in a strict products liability case based on design defect, the plaintiff has the burden of establishing that the injury was caused by the product's design, and that once this prima facie showing is made, the defendant must then prove that the product is not defective. This is correct.

The Supreme Court has said, ". . . once the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective." (*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413, 431; see also *Moreno* v. *Fey Manufacturing Corp.* (1983) 149 Cal.App.3d 23 [196 Cal.Rptr. 487]; *McGee* v. *Cessna Aircraft Co.* (1983) 139 Cal.App.3d 179 [188 Cal.Rptr. 542]; *Grimshaw* v. *Ford Motor Co.* (1981) 119 Cal.App.3d 757, 802-803 [174 Cal.Rptr. 348]; *Bates* v. *John Deere Co.* (1983) 148 Cal.App.3d 40, 51 [195 Cal.Rptr. 637].) Appellants are therefore correct in assert-

ing that it was not their burden to show that the risks involved in the loader's design—the lack of mechanical safety devices, or of a warning—outweighed the benefits of these aspects of its designs. The trial court's instruction to the jury, which quite likely would have been understood to place this burden on appellants, was therefore an error.

Nevertheless, the trial court's concern about giving the instruction on burden of proof as appellants requested was reasonable. The language was apparently taken from the use note to BAJI No. 9.00.5. The problem is that the phrase, "the defect" does seem to presuppose that a defect has been established.

On remand, the instructions to the jury on burden of proof should be carefully phrased to avoid both of these pitfalls. Perhaps the focus of the jury instruction on this issue ought to be on plaintiffs' burden to show that the *design* of the product that injured plaintiff was the *same* as the design of the product when it left defendant's possession.

*Conclusion*

The case is remanded for proceedings in accordance with the views expressed in this opinion.

Scott, J., and Feinberg, J.,* concurred.

Petitions for a rehearing were denied April 20, 1984, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied May 17, 1984.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.