15 F.3d 1083
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Henry A. COBOS, Plaintiff-Appellant,
v.
RAY-GO WAGNER, INC., Mi-Jack Products, Inc., et al.,
Defendants-Appellees.
Henry A. COBOS, Ray-Go Wagner, Inc., Mi-Jack Products, Inc.,
et al., Defendant-Intervenors-Appellees,
v.
EAGLE PACIFIC INSURANCE COMPANY, Plaintiff-Intervenor-Appellant.
 Nos. 91-56196, 91-56231.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 3, 1993.
Decided Jan. 11, 1994.
 
 Before: NOONAN, FERNANDEZ and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We must reverse because of error in failing to instruct on the consumer expectations branch of strict liability for design defect.
 
 
 3
 We reject Ray-Go's argument that Eagle Pacific's appeal was untimely. Eagle Pacific filed its notice of appeal within fourteen days of the filing of Cobos' notice of appeal. It was therefore timely under Federal Rule of Appellate Procedure 4(a)(3).
 
 
 4
 We need not reach Cobos's argument that the district court abused its discretion by keeping out evidence of other accidents involving the same machine, because we reverse on other grounds.
 
 
 5
 California has two branches of strict liability for design defect, consumer expectations and weighing benefits against risks. Barker v. Lull Engineering Co., 143 Cal.Rptr. 225 (1978). Cobos requested a jury instruction including both theories:
 
 
 6
 The manufacturer of a product is liable for injuries proximately caused by a defect in its design which existed when it left the possession of the manufacturer provided that they resulted from a use of the product that was reasonably foreseeable by the manufacturer.
 
 A product is defective in design:
 
 7
 if it fails to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner or
 
 
 8
 if there is a risk of danger inherent in the design which outweighs the benefits of that design.
 
 
 9
 In determining whether the benefits of the design outweigh such risks you may consider, among other things, the gravity of the danger posed by the design, the likelihood that such danger would cause damage, the mechanical feasibility of a safer alternate design at the time of manufacture, the financial cost of an improved design, and the adverse consequences to the product and the consumer that would result from an alternate design.
 
 
 10
 (emphasis added). The district court omitted the underlined language, which set out the consumer expectations theory, because this was not a machine of the sort purchased or used by ordinary consumers.
 
 
 11
 We review whether jury instructions state the elements of the tort de novo. Caballero v. City of Concord, 956 F.2d 204, 206 (9th Cir.1992). An erroneous jury instruction in a civil case requires reversal unless the error is more probably than not harmless. Id. We are compelled to conclude that this omission was error, and that it was not harmless.[1]
 
 
 12
 California uses this test for design defect:
 
 
 13
 [A] product is defective in design either (1) if the product has failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, or (2) if, in light of the relevant factors discussed below, the benefits of the challenged design do not outweigh the risk of danger inherent in such design....
 
 
 14
 This dual standard for design defect assures an injured plaintiff protection from products that either fall below ordinary consumer expectations as to safety, or that, on balance, are not as safely designed as they should be. At the same time, the standard permits a manufacturer who has marketed a product which satisfies ordinary consumer expectations to demonstrate the relative complexity of design decisions and the trade-offs that are frequently required in the adoption of alternative designs. Finally, this test reflects our continued adherence to the principle that, in a product liability action, the trier of fact must focus on the product, not on the manufacturer's conduct, and that the plaintiff need not prove that the manufacturer acted unreasonably or negligently in order to prevail in such an action.
 
 
 15
 Barker, 143 Cal.Rptr. at 228 (emphasis in original).
 
 
 16
 The consumer expectations theory is in the nature of warranty, and is based on the notion that a product put into the stream of commerce ought not to surprise users with unsuspected dangers. The idea is that by putting a product on the market, the manufacturer implicitly represents that it will safely do the job for which it was built. Id. at 236. The second part of the test, weighing benefit against risk, is closer to negligence analysis, and amounts in practice to jurors' evaluating engineers' testimony to judge whether, even though a manufacturer had good reasons to adopt a particular design, nevertheless the inevitable risks of a product made in such a way outweighed the benefits. A jury might be satisfied that no better design would have been a wiser balancing of risk against benefit, yet conclude that an ordinary user would not foresee the special danger posed by the product. West v. Johnson & Johnson Products, Inc., 220 Cal.Rptr. 437, 456-58 (Cal.Ct.App. 6th Dist.1985); cf. Anderson v. Owens-Corning Fiberglass Corp., 281 Cal.Rptr. 528, 539 (1991) (Broussard, J., concurring). This case is one in which the alternative theories might lead to different results. The manufacturer had good reasons for the design it used, but a jury might conclude that even if this was the safest design engineers could come up with, nevertheless no heavy equipment operator would expect his machine to burst into flame below him and give him no means of escape.
 
 
 17
 The manufacturer here depends on the proposition that if an ordinary consumer could not use the product and would have no expectations at all about it, then the consumer expectations branch of the test has no application. That misreads the purpose of the consumer expectations branch of the test. The successful plaintiff in Barker was no more an ordinary consumer than Cobos. The Barker plaintiff was operating a high-lift loader, not something any ordinary consumer buys or uses.[2] The point of the test is not the ordinariness of the consumer, but the unexpectedness of the hazard. The second part of the test enables an injured person to recover where he did not have an expectation of a safer product, but the jury nevertheless thinks that the manufacturer should have made the product safer. Barker 143 Cal.Rptr. at 236. It does not follow that even if the manufacturer could not or should not have made the product safer, then the injured person cannot recover. The jury may think that even if it was as well designed as was reasonable, nevertheless the product presented so great and unexpected a risk to the user that it should not have been put on the market at all, or anyone hurt by it should be able to recover for his injuries despite the lack of negligence. Where California has found the consumer expectations branch of the test inapplicable, it has been because a person suffering the injury from the product would have had no expectation at all. See, e.g., Brown v. Superior Court (Abbott Laboratories, 245 Cal.Rptr. 412, 419 (1988) (consumer expectations test held not applicable to prescription drugs because patient's expectations regarding drug's effects are those related by physician). In the case at bar, a user of the machine might well have an expectation of the kind relevant to the consumer expectations test.
 
 
 18
 The California intermediate appellate court decisions leave room for argument. See Akers v. Kelley Co., 219 Cal.Rptr. 513, 522-23 (Cal.Ct.App. 6th Dist.1985). In some cases, the relevance of ordinary consumer experience with the product has to do only with whether expert testimony is needed to warrant the giving of such an instruction. See Rosburg v. Minnesota Mining & Manufacturing Co., 226 Cal.Rptr. 299, 303 n. 4 (Cal.Ct.App. 1st Dist.1986). But in this case, the jury, even without the benefit of expert testimony, might be able to judge whether consumer expectations were met. Cf. Campbell v. General Motors Corp., 184 Cal.Rptr. 891 (1982). Some accidents are "so bizarre that the average juror, upon hearing the particulars, might reasonably think: 'Whatever the user may have expected from that contraption, it certainly wasn't that.' " Akers, 219 Cal.Rptr. at 524. Compare Lunghi v. Clark Equipment Corp., 200 Cal.Rptr. 387, 393 (Cal.Ct.App. 1st Dist.1984) (expert testimony required on issue "whether the user of a loader would expect that boom arms and bucket could descend with fatal crushing force when the loader is at rest with the engine off"). Under the consumer expectations branch of the test, expert testimony was not essential in this case as a foundation for a verdict, and the facts of this case entitled Cobos to get his case before the jury on the consumer expectations branch of design defect theory even without such testimony. A jury could, without an expert opinion, conclude that a person using the machine would not expect it to burst into flames and give him no safe means of escape. We cannot distinguish this case from Barker in this regard, or from Akers.
 
 
 19
 The erroneous jury instruction prevented the plaintiff from getting his theory of the case before the jury, and we cannot conclude that it was harmless error.
 
 
 20
 REVERSED, REMANDED for new trial.
 
 FERNANDEZ, Circuit Judge, dissenting:
 
 21
 I am unable to agree with the majority's resolution of this case. I will assume that there was a scintilla of evidence sufficient to require the district court to instruct on the consumer expectation test. Assuming that, Cobos must still demonstrate prejudice. In my view, he has not done so and cannot.
 
 
 22
 The long and the short of it is that I find it rather unintelligible to say that the manufacturer's product was as safe as it reasonably could be (risk-benefit), that any required warnings were properly given (failure to warn), and that there was no negligence, but that the manufacturer is still liable because a reasonable consumer could properly expect something better. But that is precisely what Cobos argues here. There is no claim that there was a failure to warn, the jury found that Cobos lost on a risk-benefit theory, and the jury found no negligence on the part of the manufacturer. To my mind, Cobos' argument, which the majority accepts, imposes a form of absolute liability upon manufacturers. The California Supreme Court, however, has insisted that it means to do no such thing. See, e.g., Barker v. Lull Engineering Co., 20 Cal.3d 413, 432, 435, 143 Cal.Rptr. 225, 238, 239-40 (1978).
 
 
 23
 It is an obvious, if unfortunate, fact of modern life that some of the sophisticated products we use are not entirely safe and, as a practical matter, cannot be made so. It was no doubt true in ancient times as well, but we are now much more capable of harnessing nature to our needs. When nature slips that harness, the results can be disastrous.
 
 
 24
 The law has responded, but not to the point of requiring manufacturers to pay for all damages their products cause. They must pay for their negligence. They must also pay if their products could have been made safer without, for example, losing their utility. They may also be held liable if an unavoidably dangerous product comes unaccompanied by appropriate warnings. However, a manufacturer that has met all of these tests should not be held liable simply because a consumer might expect a worthwhile product to be safer than it can be made. Absent absolute liability, the opposite conclusion defies logic. Perhaps that is the law of California; I do not think so.
 
 
 25
 Thus, I dissent.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Despite the cogency of our dissenting colleague's analysis, we see no way to adopt his view consistently with Barker. It does indeed appear to be the law of California that even if a manufacturer commits no negligence either in manufacture or failure to warn, and even if the product could not reasonably have been designed to be safer, nevertheless the manufacturer is liable for injury caused by the product if "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." Barker, 143 Cal.Rptr. at 239-40. We cannot find a way to reach a contrary conclusion without ignoring the first branch of the Barker test
 
 
 [2]
 In Barker, the court provided the following description of the high-lift loader: "The loader ... is a piece of heavy construction equipment designed to lift loads of up to 5,000 pounds to a maximum height of 32 feet. The loader is 23 feet long, 8 feet wide and weighs 17,050 pounds; it sits on four large rubber tires which are about the height of a person's chest, and is equipped with four-wheel drive, an automatic transmission with no park position and a hand brake." 225 Cal.Rptr. at 229. This description sounds much like the Ray-Go top handler involved in the instant case