Anthony MASSOK, Plaintiff–Appellant,

v.

KELLER INDUSTRIES, INC., a corporation n/k/a Rellek, Inc., e/s/a Rellek Industries, Inc., et al., Defendants–Appellees.

No. 03–55949.

D.C. No. CV–01–01950 MLR.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2005.

Decided Sept. 1, 2005.

of this circuit except as provided by 9th Cir. R. 36–3.

Before BROWNING, CUDAHY * and RYMER, Circuit Judges.

MEMORANDUM**

Plaintiff Anthony Massok was injured when he fell from a ladder while hanging Christmas lights on his house. He brought a product liability action against the manufacturer of the ladder, defendant Keller Industries, Inc. and related companies (Keller), in California state court. Following removal to federal district court, the district court judge excluded certain pieces of evidence introduced by Massok, determined that Massok was not entitled to a jury trial and finally granted defendant Keller judgment as a matter of law. Massok now appeals these rulings. We affirm in part, reverse in part and remand for a jury trial on the merits.

## I. BACKGROUND

This case stems from an unfortunate incident of holiday decorating gone wrong. Plaintiff Anthony Massok fell from a ladder while hanging Christmas lights on the roof of his home on December 5, 1999 and sustained serious injuries. The ladder was a Model 3116 extension ladder manufactured by Keller. Massok had owned the ladder since 1995 and had not encountered any prior problems in using it.

The ladder has two sections: (1) a base and (2) a fly that attaches to the base and extends to add length to the ladder. The base is equipped with articulated feet at the bottom of each leg of the ladder. The feet are designed to pivot so that they rest flat on the ground when the ladder is in use. There is a pad with cleats on the bottom of each foot to prevent the feet from slipping. However, the Model 3116 is a rear-fly design extension ladder. Its pivoting feet have a limited range of motion and will only rest flat on the ground when the ladder is set up with the fly section behind the base. Setting up the ladder with the fly section in front of the base allows only the edges of the feet to rest on the ground and leaves the ladder unstable and prone to slipping. Additionally, the ladder is more difficult to climb when set up backwards as the rungs angle downward and their anti-skid surfacing faces to the rear. A warning label attached to the side of the ladder shows a ladder in both front-fly and rear-fly positions, but it instructs that Model 3100 series ladders (of which the Model 3116 is one) are to be set up with the fly behind the base "to avoid slip."

At the time of the accident, Massok set up the ladder backwards, with the fly in front of the base. He testified that he had always used extension ladders with the fly section positioned in front of the base, and he had always used the Model 3116 ladder in this manner. He testified that he "looked at" the labels on the side of the ladder in a cursory fashion, but that he did not "read all the labels" and he "never saw" the label instructing that the ladder was to be set up with the fly in the rear. [See TR. 112–123, ER 366–377.] Massok was also unaware that the label instructed him to set up the ladder at an angle of 75.5 degrees.

---

* The Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Massok testified that he carefully set up the ladder at a reasonable angle, with the top of the ladder resting on the eaves of his house. He climbed the ladder carefully but felt it give way beneath him as he attempted to move from the top to the roof of the house. He does not remember the fall clearly, but testified that he did not lose his balance, miss his step or feel the ladder tip to the side. Rather, he believes he fell because the ladder slipped out from under him. As a result of the fall, Massok required surgery for serious injuries to his ankle and shoulder.

Massok brought the instant product liability action on November 28, 2000 in the Superior Court of the State of California in Los Angeles County. He claims the rear-fly design of the ladder is defective since it does not allow the feet of the ladder to rest flat on the ground when it is set up with the fly in front of the base, thus making the ladder prone to slip-outs. Massok claims that this design defect caused such a slip-out in this case, resulting in severe injuries. Along with the complaint, Massok filed and served a "Civil Case Cover Sheet Addendum Certificate of Grounds for Assignment to Court Location," which included his demand for a jury trial. The matter was removed to federal district court based on diversity of citizenship by former defendant Werner Corporation on March 1, 2001.[1] Keller was subsequently served with process, filed an answer to Massok's complaint and submitted its own demand for a jury trial on April 4, 2001.

In a joint statement filed on October 15, 2001, Massok re-asserted his right to a jury trial but Keller indicated that it no longer sought a jury trial. At the pretrial conference on November 5, 2001, the district court asked Massok's counsel whether a jury demand had been made, and counsel responded "no." Counsel failed to advise the court that Massok had already made a timely and proper jury demand in the state action. It is unclear why Massok's counsel made this misstatement. On appeal, Massok argues that his lawyer understood the judge to ask whether a jury demand had been made in federal court as opposed to state court. The case was set for a bench trial to begin on December 18, 2001.

On November 16, 2001, Massok filed a motion to have the case set for a jury trial or for an order extending the time to demand a jury trial, and for relief under Federal Rules of Civil Procedure 6(b) and 60(b), on the grounds that he was entitled to a jury trial and had made a proper demand prior to removal of the action to federal court. Massok's counsel submitted a declaration stating that she had inadvertently failed to notify the court of the previous jury demand at the pre-trial conference. Massok's motion was denied on December 3, 2001, as was his subsequent Petition for a Writ of Mandate on January 15, 2002.

On November 26, 2001, Keller filed a motion *in limine* to preclude Massok's proposed expert witness, David Paul, from testifying on the grounds that he was not qualified as an expert under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The court denied Keller's motion on January 22, 2002.

The trial began on February 18, 2003. After Massok's expert witness, David Paul, had testified and was cross-examined, Keller made a motion to strike the testimony on the grounds that Paul was not qualified to testify as an expert and the testimony was inadmissible under *Daubert.* The district court granted the motion and Paul's

---

1. Werner was later dismissed from the suit by the pre-Trial Conference Order.

testimony was stricken. The district court also excluded a brochure displaying Keller ladders and a compilation of photographs of other cracked or damaged Keller ladder feet that Massok had attempted to introduce into evidence. At the conclusion of Massok's case, Keller made a motion for judgment as a matter of law, which the court granted. Massok filed a post-trial motion challenging this ruling on several grounds, which was denied on May 5, 2003. The order denying this motion was entered on June 16, 2003.

Massok appeals the district court's exclusion of evidence (including David Paul's testimony, the Keller brochure and the photographs of damaged ladder feet), its denial of his motion for a jury trial and its ruling granting Keller judgment as a matter of law.

## II. JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b). The district court entered its order granting the defendant judgment as a matter of law on March 31, 2003. On April 11, 2003, plaintiff filed a post-trial motion to amend the district court's findings of fact and conclusions of law and for an amended judgment pursuant to Federal Rule of Civil Procedure 52. The district court denied this motion on May 5, 2003. Plaintiff timely filed his Notice of Appeal on May 30, 2003. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291, which provides for appellate review of final orders of the district courts.

## III. DISCUSSION

Massok makes three claims in the present appeal. He alleges that (1) he was wrongfully deprived of his right to a trial by jury, (2) the district court erred in excluding the testimony of his expert witness David Paul, along with some addition-

al exhibits, and (3) the district court's order granting Keller judgment as a matter of law was contrary to California product liability law.

### A. Exclusion of Evidence

Massok first challenges the district court's decision to exclude from evidence (1) the testimony of his expert witness, David Paul, (2) a copy of a brochure displaying Keller ladders and (3) a compendium of photographs showing cracks or wear on other Keller ladder feet. We review all such evidentiary rulings for an abuse of discretion. *McEuin v. Crown Equipment Corp.*, 328 F.3d 1028, 1032 (9th Cir.2003) (general evidentiary rulings); *Kumho Tire, Ltd. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999) (decision to admit or exclude expert testimony); *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir.2001) (decision to admit or exclude scientific evidence); *United States v. Benavidez–Benavidez*, 217 F.3d 720, 723 (9th Cir.2000) ("determination of whether an individual's qualifications are sufficient to testify as an expert"). The party challenging the ruling must show both abuse of discretion and prejudice (i.e., that the rulings more likely than not tainted the ultimate verdict). *McEuin*, 328 F.3d at 1032.

### 1. Expert Testimony of David Paul

■ At trial Massok attempted to introduce, via written report, David Paul's analysis of the Model 3116 ladder's design and the causes of Massok's fall. According to his expert testimony, the ladder's design prevented its feet from resting squarely on the ground when set up backwards. This design defect lead the cleats to shear off and the feet to slip out. [ER 170–171]. In support of his testimony, Paul stated that he was a forensics expert with a bachelor's degree in mechanical engineering and ex-

tensive experience in analyzing ladder slip-out cases. At the time of the trial, Paul worked as a manager of Forensic Engineering for Applied Technical Services (ATS), a firm that specializes in analyzing the causes of product failure.

The district court found Paul did not qualify as an expert and excluded his testimony. The district court noted Paul had never designed ladders, had never written or lectured on the subject and had produced no peer-reviewed work or independent confirmation of his qualifications. Moreover, he based his conclusions on inadequate testing and had failed the Georgia state mechanical engineering examination five times.

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, refers only to "a witness qualified as an expert by knowledge, skill, experience, training, or education"; no specific credentials or qualifications are mentioned. Likewise, we have previously held an expert need not be officially credentialed in the specific matter under dispute. *See United States v. Garcia*, 7 F.3d 885, 889–90 (9th Cir.1993) (not an abuse of discretion to permit expert testimony from a child mental health specialist on the likely emotional effects on children of testifying in court, even where the specialist lacks "particularized expertise").

Nonetheless, the district court's reservations concerning Paul's qualifications are reasonable. The factual bases for excluding his testimony are undisputed. Unlike Keller's expert, Paul was not a Ph.D. He did not test any loads on the Massok ladder itself. He was unable to pass the Georgia mechanical engineering exam after multiple attempts. While reasonable minds may differ, the district court did not abuse its discretion and we affirm.

The district court's previous refusal to exclude the testimony after an *in limine* motion seeking its preclusion is not to the contrary. The Supreme Court has expressly ruled that "even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce v. United States*, 469 U.S. 38, 41–42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (emphasis in original).

### 2. The Keller Brochure and Photographs of Ladder Feet

At trial Massok also attempted to introduce into evidence a brochure displaying Keller ladders, which shows the Model 3116 ladder set up with the fly in the front (just as Massok had set it up), and a compendium of photographs depicting other cracked or damaged Keller ladder feet. The district court dismissed the brochure as irrelevant because Massok had never read it. However, under California law, a plaintiff need only demonstrate a product does not perform as safely as an ordinary consumer would expect when used *in a reasonably foreseeable manner* for it to be found to have a design defect. *See Barker v. Lull Engineering*, 20 Cal.3d 413, 432, 143 Cal.Rptr. 225, 573 P.2d 443 (1978)(emphasis added). The brochure is evidence of both the foreseeability of Massok's use of the ladder and Keller's anticipation of such use. The brochure remains relevant to Massok's claim even though he had not seen it prior to his accident.

The district court also excluded Massok's photographs of similarly damaged ladders. These may also be relevant even though Massok did not see them before his fall. Under California law, "[e]vidence of prior accidents is admissible to prove a defective condition, knowledge, or the cause of an accident, provided that the circumstances of the other accidents are similar and not too remote." *Elsworth v. Beech Aircraft Corp.*, 37 Cal.3d 540, 555,

208 Cal.Rptr. 874, 691 P.2d 630 (1984). *See also Ault v. Int'l Harvester Co.*, 13 Cal.3d 113, 121–22, 117 Cal.Rptr. 812, 528 P.2d 1148 (1974). The pictures of other damaged ladder feet are admissible as evidence of other instances of product failure despite the fact Massok had not previously seen them.

The district court's refusal to admit these two pieces of evidence was thus an error of California law and therefore an abuse of discretion. *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1426 (9th Cir.1996) ("A district court by definition abuses its discretion when it makes an error of law.") (quoting *Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)). Here, that error was prejudicial to Massok's case. *McEuin*, 328 F.3d at 1032 (the party challenging an evidentiary ruling must show both abuse of discretion and that the rulings more likely than not tainted the ultimate verdict). That question, of course, hinges in part on the quality and persuasiveness of other evidence adduced at trial, and since here the district court permissibly excluded Massok's proffered expert testimony, little remained to support Massok's case. However, in light of the fact that the district court's decision to grant Keller judgment as a matter of law was erroneous under California law and the case must be remanded for a jury trial (*see* discussion in section B, *infra*), exclusion of this evidence must be deemed prejudicial since the excluded material may well have made a difference to a jury. We therefore reverse the district court's decision to exclude Massok's photographs and the Keller brochure. These items should be admitted into evidence at the jury trial on remand.

### B. Grant of Judgment as a Matter of Law

Massok challenges the district court's order granting Keller judgment as a matter of law. We review such an order *de novo*. *Horphag Research Ltd. v. Pellegrini*, 337 F.3d 1036, 1040 (9th Cir.2003); *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1060 (9th Cir.2000). In conducting this inquiry, "the evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." *Pellegrini*, 337 F.3d at 1040. "If conflicting inferences may be drawn from the facts, the case must go to the jury." *Howard*, 228 F.3d at 1060 (internal quotation marks omitted).

■ Before engaging the substantive provisions of California product liability law, there is a threshold question of causation. Liability may be imposed only if the product's design proximately caused the injury to the plaintiff. *See Soule v. General Motors*, 8 Cal.4th 548, 566, 34 Cal. Rptr.2d 607, 882 P.2d 298 (1994) (liability is possible only "*if* the [product] failure resulted from the product's design") (emphasis in original). As Keller points out, there are doubts regarding causation since Massok does not remember the fall from the ladder and there was no direct evidence the ladder fell *because* of the feet design apart from plaintiff's excluded expert testimony. Nonetheless, there is still enough evidence to infer the necessary causation here. Massok testified that he did not lose his balance, miss his step or feel the ladder tip to the side. It is undisputed that the Model 3116 ladder is more apt to slip when set up backwards because the feet do not rest flat on the ground— Keller even issued a warning to this effect on the side of the ladder. Viewing the evidence in the light most favorable to Massok, one may reasonably infer the design of the feet proximately caused the ladder to slip out from under Massok.

Both parties agree California law controls. Under California law, a plaintiff may prove liability for a defective product under either of two alternative theories:

First, a product may be found defective in design if the plaintiff establishes that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. Second, a product may alternatively be found defective in design if the plaintiff demonstrates that the product's design proximately caused his injury and the defendant fails to establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risk of danger inherent in such design.

*Barker v. Lull Engineering,* 20 Cal.3d 413, 432, 143 Cal.Rptr. 225, 573 P.2d 443 (1978).

Massok argued at trial that the "consumer expectation" theory—reserved for products and circumstances within the experience and understanding of ordinary consumers—applies to the facts of this case. For such claims, plaintiffs need not introduce expert witness testimony, *Soule,* 8 Cal.4th at 567, 34 Cal.Rptr.2d 607, 882 P.2d 298. To prevail, a plaintiff need only demonstrate "the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner." *Barker,* 20 Cal.3d at 432, 143 Cal.Rptr. 225, 573 P.2d 443. *See also Boeken v. Philip Morris, Inc.,* 127 Cal.App.4th 1640, 1669, 26 Cal.Rptr.3d 638 (Cal.Ct.App.2005).

The California Supreme Court has explained the rationale of this test as follows:

The purposes, behaviors, and dangers of certain products are commonly understood by those who ordinarily use them. By the same token, the ordinary users or consumers of a product may have reasonable, widely accepted minimum expectations about the circumstances under which it should perform safely. Consumers govern their own conduct by these expectations, and products on the market should conform to them.

*Soule,* 8 Cal.4th at 566, 34 Cal.Rptr.2d 607, 882 P.2d 298. "The crucial question in each individual case is whether the circumstances of the product's failure permit an inference that the product's design performed below the legitimate, commonly accepted minimum safety assumptions of its ordinary consumers." *Id.* at 568–69, 34 Cal.Rptr.2d 607, 882 P.2d 298.

Accordingly, this theory of liability is "reserved for cases in which the *everyday experience* of the product's users permits a conclusion that the product's design violated *minimum* safety assumptions, and is thus defective." *Id.* at 567, 34 Cal.Rptr.2d 607, 882 P.2d 298 (emphasis in original). It is not appropriate for cases involving the "behavior of several obscure components" or "complex circumstances" beyond a normal user's frame of reference. *Id.* at 570, 34 Cal.Rptr.2d 607, 882 P.2d 298 (case involving an alleged design defect in an automobile that allowed the car's wheel to break free during an accident). *See also Morson v. Superior Court,* 90 Cal.App.4th 775, 795, 109 Cal.Rptr.2d 343 (Cal.Ct.App. 2001) (case involving allergic reactions to latex gloves); *Pruitt v. General Motors,* 72 Cal.App.4th 1480 1483–85, 86 Cal.Rptr.2d 4 (Cal.Ct.App.1999) (case involving deployment of an automobile air bag); *Rosburg v. Minnesota Mining & Mfg. Co.,* 181 Cal. App.3d 726, 732–33, 226 Cal.Rptr. 299 (Cal. Ct.App.1986) (case involving performance of breast implants over time); *Lunghi v. Clark Equip. Co.,* 153 Cal.App.3d 485, 496, 200 Cal.Rptr. 387 (Cal.Ct.App.1984) (case involving a Bobcat model industrial loader).

The line between the common and the arcane is not always easy to draw. California courts have historically applied this

test liberally, allowing consumer expectations arguments to reach juries in cases involving novel factual circumstances or somewhat esoteric scientific issues. *See, e.g., Akers v. Kelley Co.,* 173 Cal.App.3d 633, 650–52, 219 Cal.Rptr. 513 (1985) (case involving a spring-loaded dockboard); *West v. Johnson & Johnson,* 174 Cal. App.3d 831, 867, 220 Cal.Rptr. 437 (1985) (case involving toxic shock syndrome stemming from the use of tampons).

We must determine whether the circumstances of the case present a "matter of common experience." In *Campbell v. General Motors Corp.,* 32 Cal.3d 112, 184 Cal. Rptr. 891, 649 P.2d 224 (1982), a plaintiff who had been injured when she was thrown from her seat on a public bus during a sharp turn sued the bus manufacturer for product liability, alleging that there were insufficient safety grab-bars near her seat. The California Supreme Court ruled that the plaintiff had presented enough evidence to reach a jury, even though she had only presented her own testimony and pictures of the interior of the bus (showing the positions of the grab-bars). *Id.* at 126, 184 Cal.Rptr. 891, 649 P.2d 224. The court explained that "[s]ince public transportation is a matter of common experience," it was enough for plaintiff to "establish the objective conditions of the product" and allow the jurors to apply their "own sense of whether the product meets ordinary expectations as to its safety under the circumstances presented by the evidence." *Id.*

We find the consumer expectations test applies here. The use of an extension ladder can be described as a "matter of common experience" as to which ordinary consumers have formed "reasonable, widely accepted minimum expectations about the circumstances under which it should perform safely," *Soule,* 8 Cal.4th at 566, 34 Cal.Rptr.2d 607, 882 P.2d 298. An extension ladder is not so complex or arcane as to be beyond the grasp of an ordinary user. It is a common product found in any hardware store, and the mechanics of the fly mechanism and pivoting feet are easy for anyone to grasp. It is a good deal more familiar to the average consumer than other products deemed amenable to the consumer expectations analysis by California courts. *See, e.g., Akers,* 173 Cal. App.3d at 650–52, 219 Cal.Rptr. 513 (applying the consumer expectations test to an accident involving a spring-loaded dockboard).

Ordinary consumers may reasonably expect extension ladders to perform safely when set up with the fly section in front of the base. It is undisputed that most ladders on the market (unlike the Keller Model 3116) are designed to be used in this manner. The formal nomenclature of the ladder components might be somewhat unfamiliar, but the basic phenomenon under discussion is not.[2]

The only other requirement under the consumer expectation test is that the plaintiff used the ladder in an "intended or reasonably foreseeable manner." *Barker,* 20 Cal.3d at 432, 143 Cal.Rptr. 225, 573

---

**2.** As the dissent demonstrates, one can articulate the possibility of ladder foot slippage in relatively esoteric scientific terms. However, notwithstanding the dissent's invocation of "the coefficient of friction" and the purported need for expert testimony, the typical ladder user is fully aware that if the ladder feet do not pivot so that they rest flat on the ground, there is considerable risk. In this light, the relevant inquiry, under the consumer expecta-

tions test, concerns not the coefficient of friction nor any complex questions of strength of materials. Rather, it concerns whether an ordinary consumer would consider the Model 3116 ladder unreasonably dangerous given that its feet cannot rest flat on the ground— and thus that it is prone to slippage—when the ladder is set up with the fly section in front of the base. This issue is well within the range of an ordinary consumer's experience.

P.2d 443. It is undisputed that Massok set the ladder up backwards, placed it in too shallow an angle and was heavier than its tested duty weight. Despite such mistakes, Massok's misuse of the ladder does seem foreseeable. *Cf. Boeken,* 127 Cal. App.4th at 1668, 26 Cal.Rptr.3d 638 ("Some degree of misuse and abuse of the product is foreseeable.") Indeed the warnings on the side of the ladder (which Massok failed to read) warn against the very same errors.

This is not to say that Massok will necessarily win on the merits. Most of his evidence regarding the flaws in the ladder's design and the exact ways in which the flaws caused the accident were excluded with the striking of David Paul's testimony. However, under *Soule,* no expert testimony is required to proceed under the consumer expectations test and *Campbell* instructs that a plaintiff may reach a jury on nothing more than his own testimony and evidence of the "objective conditions of the product." 32 Cal.3d at 126, 184 Cal. Rptr. 891, 649 P.2d 224. Massok has met this modest threshold.

■ Massok also alleges that Keller failed in its duty to provide a sufficient warning concerning the dangers of setting up the Model 3116 ladder with the fly section in the front of the base. Here, Massok admits that he did not read the warnings and so the sufficiency of Keller's warnings is therefore irrelevant. [*See* TR. 112–123, ER 366–377.] Massok's claim based on failure to warn is without merit. *Motus v. Pfizer, Inc.,* 358 F.3d 659 (9th Cir.2004) (sufficiency of warning as to side effects associated with a drug is not in issue where the physician prescribing the drug did not read the warning); *Ramirez v. Plough, Inc.,* 6 Cal.4th 539, 556, 25 Cal.Rptr.2d 97, 863 P.2d 167 (1993) (no liability where "there is no conceivable causal connection between the representations or omissions that accompanied the product and plaintiff's injury").[3]

In sum, since the circumstance of this case present a "matter of common experience" amenable to the consumer expectation theory of liability, *Campbell,* 32 Cal.3d at 126, 184 Cal.Rptr. 891, 649 P.2d 224, and since "conflicting inferences may be drawn from the facts" regarding the ultimate question of liability, *Howard,* 228 F.3d at 1060 (internal quotations omitted), the district court's grant of judgment as a matter of law in favor of Keller was error. We accordingly reverse that ruling.

**C. Right to a Jury Trial**

■ Because we find the district court erred in granting Keller judgment as a matter of law, we must also determine whether Massok waived his right to a jury trial. We review *de novo* a litigant's entitlement to a jury trial. *Kulas v. Flores,* 255 F.3d 780, 783 (9th Cir.2001); *Del Monte Dunes,* 95 F.3d at 1426. "[H]owever, the district court has discretion to grant or deny an untimely jury demand." *Kulas,* 255 F.3d at 783.

---

**3.** We also pause to note that Massok's failure to read the warning labels, even if considered negligent, does not necessarily bar recovery under California's comparative negligence regime. Regardless of the plaintiff's negligence in using the product, a manufacturer is still under a duty to provide consumers with a non-defective product, and thus any fault on the part of the plaintiff is simply factored into the more general comparative negligence calculus when assessing the parties' relative responsibility for the injury. *See, e.g., Milwau-* kee *Electric Tool Corp. v. Superior Court,* 15 Cal.App.4th 547, 558, 19 Cal.Rptr.2d 24 (Cal. Ct.App.1993) ("Even if an injured plaintiff's acts constituted misuse of a product, if those acts were foreseeable, strict liability may still apply, although the plaintiff's comparative negligence might serve to reduce any award he or she might receive proportionate to such fault."); *Bunch v. Hoffinger Industries, Inc.,* 123 Cal.App.4th 1278, 1301, 20 Cal.Rptr.3d 780 (Cal.Ct.App.2004) (articulating a similar principle).

There is no dispute that Massok was entitled to a jury trial under California state law, *see* CAL.CIV.PROC.CODE § 631, and made a valid jury demand when he submitted his "Civil Case Cover Sheet Addendum Certificate of Grounds for Assignment to Court Location." [*See* ER 2–5; Los Angeles County Superior Court Local Rule 2.0(d).] Additionally, under Federal Rule of Civil Procedure 81(c), "[a] party who, prior to removal, has made an express demand for trial by jury in accordance with state law, need not make a demand after removal." Thus Massok's valid California jury demand followed him to federal court upon removal. The sole question is whether Massok's counsel waived this right by (apparently inadvertently) informing the district judge at the pre-trial conference that no jury demand had been made.

Under Federal Rule of Civil Procedure 39(a), once a valid jury demand is made, the district court must honor it "unless (1) the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury or (2) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist." No written stipulation exists. The district court's decision was based exclusively on counsel's oral statement at the pre-trial conference.

This, however, was not an "oral stipulation" sufficient to waive Massok's right to a jury trial. First, there is no indication that the statement was "entered in the record" as required by statute. Fed. Rule of Civil Procedure 39(a). Second, it is uncontested that Massok's counsel said only that no jury demand had previously been made. Whether counsel simply forgot a demand *had* been made in state court or meant that no jury demand had yet been made in *federal* court is irrelevant. Neither suffices to waive a previously asserted jury demand.

A waiver of the right to a jury trial must be made knowingly and intentionally. *National Equipment Rental, Ltd. v. Hendrix,* 565 F.2d 255, 258 (2d Cir.1977) ("It is elementary that the Seventh Amendment right to a jury is fundamental and that its protection can only be relinquished knowingly and intentionally."). There is no intentional withdrawal of a previous jury demand here. At most, there is an intentional failure to *make* a jury demand; but as shown above, Massok was not legally required to make a jury demand in federal court where he had previously made a valid demand prior to removal. Fed. Rule of Civil Procedure 81(c). Moreover, "there is a presumption against unintended waivers of the right to jury trial." *Mondor v. United States District Court,* 910 F.2d 585, 587 (9th Cir.1990); *see also Pradier v. Elespuru,* 641 F.2d 808, 811 (9th Cir.1981) ("[T]he right to a jury trial is a fundamental right guaranteed to our citizenry by the Constitution, courts should indulge every reasonable presumption against waiver."). Where counsel does not explicitly state a desire to withdraw a previously asserted right to jury trial, we will not read in an intention to do so.

We hold that Massok did not waive his jury demand. The district court's failure to allow Massok a jury trial was not harmless because a reasonable jury could have returned a verdict for Massok under the consumer expectations test. On remand, Massok is entitled to a jury trial.

## IV. CONCLUSION

For the foregoing reasons we AFFIRM the district court's exclusion of David Paul's proffered expert testimony, REVERSE the ruling of the district court excluding the brochure of Keller ladders

and the photographs of other damaged Keller ladder feet, REVERSE the district court's order granting defendant's judgment as a matter of law, REVERSE the district court's denial of Massok's demand for a jury trial and REMAND the case for further proceedings not inconsistent with this opinion. On remand, the district court should admit the excluded brochure and photographs into evidence for the limited purposes identified here. Each party shall bear its own costs on appeal.

RYMER, Circuit Judge, concurring in part and dissenting in part.

I agree that the expert testimony was properly excluded, but disagree that the judgment entered as a matter of law should be reversed and that the district court abused its discretion when it refused to admit the brochure and photographs of other ladder feet.

I do not believe that the theory posited by Massok for the defect in the ladder—the structure of the ladder's articulated foot—is properly the subject of the consumer expectation test. The consumer expectation test is only appropriate where a juror can use his or her own everyday experience to determine whether the product's design violates minimum safety assumptions. *Soule v. General Motors Corp.*, 8 Cal.4th 548, 34 Cal.Rptr.2d 607, 882 P.2d 298, 308 (1994); *Campbell v. General Motors Corp.*, 32 Cal.3d 112, 184 Cal. Rptr. 891, 649 P.2d 224, 232–33 (1982). I do not think that the way in which the foot of the ladder articulates to support the ladder's position, the anti-slip properties of the plastic on the foot, or whether or not setting up the ladder backwards fatigued the plastic on the foot so that it cracked and gave out from under Mr. Massok, are within the ordinary consumer's everyday experience with product safety. In contrast to cases where the California courts have held that the consumer expectation test is appropriate, *see, e.g., Campbell*, 184

Cal.Rptr. 891, 649 P.2d at 230 & 232–33 (holding expert testimony not required and consumer expectation test proper to determine whether lack of handrail on bus was design defect), Massok's theories of how his ladder should have performed more safely—involving things such as the coefficient of friction—can only be explained through expert testimony. *See Soule*, 34 Cal.Rptr.2d 607, 882 P.2d at 308 & 310 (holding design of car frame, suspension and interior and expectations of performance of those parts of car during collision are outside ordinary experience and understanding of consumer); *Morson v. Superior Court*, 90 Cal.App.4th 775, 793, 109 Cal.Rptr.2d 343 (Cal.Ct.App.2001) (holding latex glove design not properly subject of consumer expectation test). However, expert testimony is not germane to ordinary consumer expectations.

Expert analysis is relevant to the risk-benefit theory, but with Massok's expert excluded, there was insufficient evidence to establish that the design of the product caused his injury. *Barker v. Lull Engineering Co.*, 20 Cal.3d 413, 143 Cal.Rptr. 225, 573 P.2d 443, 456 (1978).

Finally, whether adequate warning was given by labels explaining the proper set-up for the Keller model 3116 ladder is immaterial because Massok didn't read them. For this reason he cannot prove that inadequate labeling of the ladder caused his injury. *See Ramirez v. Plough, Inc.*, 6 Cal.4th 539, 25 Cal.Rptr.2d 97, 863 P.2d 167, 177 (1993); *Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir.2004).

The district court did not err when it excluded the Keller brochure as the brochure was not relevant for the purposes of Massok's failure to warn claim because he never saw the brochure. Since use of the consumer expectation test is not appropriate in this case, any tendency of the brochure to indicate whether setting up the ladder backwards was reasonably foresee-

able to Keller is likewise irrelevant. The district court appropriately denied admission of the photographs taken by Massok's proposed expert David Paul of other Keller ladder feet. Massok provided no information about how Paul acquired these ladders, how their previous owners treated the ladders, or how the cracks documented in the ladders were caused. Massok failed to establish that these photographs were even indicative of past accidents involving Keller ladders. The district court's evidentiary rulings were therefore entirely appropriate.

As I would affirm the district court's judgment as a matter of law for Keller, I need not address Massok's argument regarding his right to a trial by jury, as any error was harmless.